# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Smith*, 2013 IL App (2d) 121164

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GEORGE SMITH, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-1164 |
| Filed | November 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An indictment charging defendant with a felony of driving while his license was suspended at a time when his license was revoked or suspended was improperly modified to a misdemeanor based on the trial court's acceptance of defendant's argument that a statutory summary suspension had been entered when his license had already been revoked, thereby rendering the suspension a nullity that required the dismissal of the felony charge, since the revocation of a driver's license does not preclude the future revocation or suspension of the same license; therefore, defendant's conviction for a misdemeanor was reversed and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 12-CF-169; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal      Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael J. Pelletier, Thomas A. Lilien, and Jamie L. Montgomery, all of State Appellate Defender's Office, of Elgin, for appellee.

Panel      JUSTICE BIRKETT delivered the judgment of the court, with opinion.

Justices Jorgensen and Hudson concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant, George Smith, was charged by indictment with, *inter alia*, driving while his license was suspended (DWLS) (625 ILCS 5/6-303(a) (West 2012)). That offense was charged as a Class 2 felony pursuant to section 6-303(d-5) of the Illinois Vehicle Code (Code) (625 ILCS 5/6-303(d-5) (West 2012)). The State appeals from an order of the circuit court of Kane County modifying the indictment by reducing the charge to a misdemeanor. We reverse and remand.

¶ 2      The indictment originally alleged that on or about January 25, 2012, "defendant operated a motor vehicle upon a road in North Aurora, Illinois at a time when the defendant's driver's license was suspended or revoked for a violation of Illinois Compiled Statutes Chapter 625, Act 5, Section 11-501 and after having fourteen or more prior violations for the offense of driving while license was revoked or suspended." The State was later permitted to amend the indictment to allege that defendant was driving while a statutory summary suspension of his license (see 625 ILCS 5/11-501.1 (West 2012)) was in effect. Defendant moved to dismiss the charge. At the hearing on the motion, defendant submitted the abstract of his driving record to show that the statutory summary suspension had been entered when his driver's license had already been revoked. Relying on *People v. Heritsch*, 2012 IL App (2d) 090719, defendant argued that the statutory summary suspension was therefore a nullity. Defendant further argued that his license had been revoked for a reason other than those enumerated in section 6-303(d-5) as prerequisites for enhancing the charged offense to a felony. The trial court agreed, but instead of dismissing the charge, the trial court ordered the indictment amended so as to reduce the charged offense to a misdemeanor.

¶ 3      Section 6-303(a) of the Code (625 ILCS 5/6-303(a) (West 2012)) provides, in pertinent part, that "any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or the law of another state, except as may be specifically allowed by a judicial

-2-

driving permit issued prior to January 1, 2009, monitoring device driving permit, family financial responsibility driving permit, probationary license to drive, or a restricted driving permit issued pursuant to this Code or under the law of another state, shall be guilty of a Class A misdemeanor." At the time of the alleged offense in this case, subsections (d-2), (d-3), (d-4), and (d-5) provided for escalating penalties, based on the number of prior convictions, "if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d-2), (d-3), (d-4), (d-5) (West 2012).[1] Section 11-401 pertains to the duties of a motorist involved in an accident involving death or personal injuries, and section 11-501 creates the offense of driving under the influence of alcohol or drugs (DUI). 625 ILCS 5/11-401, 11-501 (West 2012). Under section 6-205(a) of the Code (625 ILCS 5/6-205(a) (West 2012)), the Secretary of State (Secretary) "shall immediately revoke the license, permit, or driving privileges of any driver upon receiving a report of the driver's conviction" of a violation of section 11-401 or 11-501. Section 11-501.1, the so-called "implied consent law," provides that a motorist operating a vehicle on a public highway in Illinois is deemed to have consented that, if arrested for DUI, he or she will submit to chemical testing to determine his or her blood alcohol level. If the motorist refuses to undergo testing, or submits to testing that reveals a blood alcohol level of 0.08 or more, his or her driving privileges will be summarily suspended. Under section 6-303(d-5), a driver whose license is revoked for one of the specified reasons is guilty of a Class 2 felony, and is ineligible for probation or conditional discharge, if he or she has 14 or more prior convictions of driving with a suspended or revoked license. 625 ILCS 5/6-303(d-5) (West 2012).

¶ 4       In reducing the DWLS charge in this case from a Class 2 felony to a Class A misdemeanor, the trial court relied on the decision of a divided panel of this court in *Heritsch*. In *Heritsch*, the defendant's conviction of driving while his license was *revoked* (DWLR) was enhanced to a Class 2 felony under section 6-303(d-5). The offense occurred in 2008. The defendant's license had been revoked for the first time in 1991, but not for any of the reasons that result in an enhanced sentence under section 6-303(d-5). Rather, it had been revoked because the defendant had used a motor vehicle to commit a drug-related felony. The defendant did not obtain a new driver's license after the revocation. However, the abstract of the defendant's driving record showed that, in 2001, the defendant had violated section 11-501 of the Code–*i.e.*, he had committed the offense of DUI–and that the Secretary had revoked his license for that reason. Because the 1991 revocation could not be the basis for an enhanced sentence under section 6-303(d-5), the validity of the defendant's felony conviction depended on whether he was eligible for an enhanced sentence on the basis that his license had been revoked in 2001 for DUI. The *Heritsch* majority concluded that he was not eligible for enhanced sentencing on that basis. The majority reasoned, in essence,

---

[1]At present, each of the *prior* convictions must also have occurred while the defendant's license was suspended or revoked for one of these reasons. See Pub. Act 98-418, § 5 (eff. Aug. 16, 2013) (amending 625 ILCS 5/6-303(d-2), (d-3), (d-4), (d-5)); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013) (amending 625 ILCS 5/6-303(d-2), (d-3), (d-4), (d-5)).

that, after the defendant's license had been revoked in 1991, there was no license that could be revoked when the defendant committed DUI in 2001. Therefore, according to the majority, "the Secretary's 2001 formal administrative sanction of revocation had no effect." *Heritsch*, 2012 IL App (2d) 090719, ¶ 9. The *Heritsch* majority's reasoning would apply with equal force to the statutory summary suspension of a previously revoked driver's license.

¶ 5        Here, the State raises both procedural and substantive challenges to the trial court's ruling. According to the State, the ruling was procedurally infirm because the trial court: (1) had no authority to modify the charge and (2) should have considered only whether the indictment, on its face, properly charged a felony DWLS. With respect to the latter point, the State insists that the trial court erred by considering whether the abstract of defendant's driving record refuted the allegations. Substantively, the State argues that, even if defendant's license had been revoked prior to the statutory summary suspension of the license, the revocation did not vitiate the statutory summary suspension. In other words, the State challenges the proposition that a motorist's driving privileges, having once been revoked, cannot thereafter (unless restored through the issuance of a permit or a new license, or in some other manner) be suspended or "re-revoked." The State recognizes that this argument is contrary to *Heritsch*. The State contends, however, that *Heritsch* was decided incorrectly and should be abrogated.

¶ 6        As discussed below, we agree with the State's substantive argument. In our view, when a motorist's driving privileges are subject to statutory summary suspension under the implied consent law, the suspension is valid notwithstanding any prior revocation or suspension of the motorist's driving privileges. Such a suspension may therefore be the basis for an enhanced penalty for violating section 6-303(a) while the suspension is in effect. Before we explain this conclusion, we note that a narrower decision on procedural grounds would be inappropriate under the circumstances of this case. Were we to reverse the trial court's decision solely on the basis that the indictment was valid on its face or that the trial court had no power to modify the indictment, there would be a significant likelihood that the substantive issue would arise on remand. Thus, regardless of our views on the procedural issue, it would be appropriate to consider the State's substantive challenge to the trial court's ruling. Moreover, because we *agree* with the State's substantive challenge, the procedural issues are purely academic, so we need not address them.

¶ 7        We further note that, although the trial court was required to follow *Heritsch* (see *State Farm Mutual Auto Insurance Co. v. McFadden*, 2012 IL App (2d) 120272, ¶ 9), we are not bound to do so. Our supreme court has noted:

> " ' "[S]*tare decisis* requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts." ' [Citation.] Thus, the opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels. [Citation.]" *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008).

Although we are not obligated to follow *Heritsch*, it is "a decision from another panel of a court of equal stature" (*In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008)), and we therefore lack the power to grant the State's request to abrogate it (*id.*).

¶ 8 The issue on appeal–whether, for purposes of the DWLS law, driving privileges that have been revoked are subject to statutory summary suspension while the revocation remains in effect–is principally one of statutory construction. Our supreme court has recently offered the following summary of the basic principles that guide our analysis:

"It is well settled that issues of statutory construction are questions of law subject to *de novo* review. [Citation.] When construing a statute, this court's primary objective is to ascertain and give effect to the legislature's intent, keeping in mind that the best and most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning. [Citation.] In determining the plain meaning of the statute, we consider the subject the statute addresses and the legislative purpose in enacting it. [Citation.] This court has repeatedly held that statutes should be read as a whole and construed so that no part is rendered meaningless or superfluous. [Citation.] In doing so, we may consider the statute's context, reading the provision at issue in light of the entire section in which it appears, and the Act of which that section is a part. [Citations.]" *People v. Lloyd*, 2013 IL 113510, ¶ 25.

¶ 9 When the language of a statute is clear and unambiguous, courts may not depart from the language by incorporating exceptions, limitations, or conditions that the General Assembly did not express. *Wilkins v. Williams*, 2013 IL 114310, ¶ 22. However, "the task of interpreting the language of a statute cannot always be reduced to 'the mechanical application of the dictionary definitions of the individual words and phrases involved,' " so courts must take care "not to read statutory language in an overly literal manner." *People v. Wood*, 379 Ill. App. 3d 705, 708-09 (2008) (quoting *Whelan v. County Officers' Electoral Board*, 256 Ill. App. 3d 555, 558 (1994)). To similar effect, our supreme court has observed that "[a] statute or ordinance must receive a sensible construction, even though such construction qualifies the universality of its language." *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 246 (1994). For these reasons, "[a] literal interpretation is not controlling where the spirit and intent of the General Assembly in enacting a statute are clearly expressed, its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statute will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result [citation]." *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263, 266-67 (2004).

¶ 10 Pursuant to section 1-176 of the Code, "revocation" of a driver's license means "[t]he termination by formal action of the Secretary of a person's license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the Secretary after the expiration of at least one year after the date of revocation." 625 ILCS 5/1-176 (West 2012).

¶ 11 If the statutory definition of "revocation"–the "*termination \*\*\* of a person's license or privilege to operate a motor vehicle*" (emphasis added) (625 ILCS 5/1-176 (West 2012))–is given its most literal meaning, the argument that revocation is a singular occurrence might appear to be an ontological truism: after one's license or privilege to operate a vehicle is terminated, it no longer exists and therefore cannot again be terminated. By the same logic,

a revoked license could not be suspended either. It is reasonably clear from examination of the Code as a whole, however, that the General Assembly did not intend for the term "revocation" to be read so literally. To the contrary, "revocation" appears to be used, in part, as a term of art that refers to a formal act of the Secretary and its attendant legal consequences. Thus, section 6-205(a) places no express limitation on the number of times the Secretary may revoke a driver's license. Nor does section 6-205(a) expressly limit revocation to cases where no prior revocation is in effect.

¶ 12      Other Code provisions support our conclusion that the revocation of a driver's license does not preclude the future revocation or suspension of the same license. For instance, section 6-208(b)(1.5) of the Code formerly provided, "If the person is convicted of a violation of Section 6-303 of this Code committed while his or her driver's license, permit, or privilege was revoked because of a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar provision of a law of another state, the person may not make application for a license or permit until the expiration of 3 years from the *effective date of the most recent revocation*." (Emphasis added.) 625 ILCS 5/6-208(b)(1.5) (West 2008). The words "most recent" would have been superfluous if the revocation of a driver's license were a singular occurrence. See *Heritsch*, 2012 IL App (2d) 090719, ¶ 40 (Birkett, J., dissenting). Section 6-205(c)(2) of the Code provides, "If a person's license or permit is revoked or suspended *due to 2 or more convictions* of violating Section 11-501 of this Code or a similar provision of a local ordinance or a similar out-of-state offense, or Section 9-3 of the Criminal Code of 1961 or the Criminal Code of 2012, where the use of alcohol or other drugs is recited as an element of the offense, or a similar out-of-state offense, *** that person, if issued a restricted driving permit, may not operate a vehicle unless it has been equipped with an ignition interlock device as defined in Section 1-129.1." (Emphasis added.) 625 ILCS 5/6-205(c)(2) (West 2012). To hold that revocation is a singular occurrence would make this provision meaningless. See *Heritsch*, 2012 IL App (2d) 090719, ¶ 40 (Birkett, J., dissenting).

¶ 13      Not only is the literal interpretation of "revocation" in conflict with the usage of that term in sections 6-205(c)(2) and 6-208(b)(1.5), the literal interpretation leads to absurd results. The Fifth District recognized as much in *People v. Masten*, 219 Ill. App. 3d 172 (1991). In that case, the defendant's Illinois driver's license was revoked in 1976, and between 1976 and 1983 he was convicted on three occasions of driving while his license was revoked. In May 1989, the Secretary ordered the statutory summary suspension of the defendant's still-revoked driver's license for a six-month period. In June 1989, the defendant obtained a Virginia driver's license. In 1990, the defendant was charged with DWLR. The trial court dismissed that charge, evidently because the defendant held a Virginia license at the time of the offense. However, Virginia, like Illinois, was a party to the Driver's License Compact (Compact) (see 625 ILCS 5/6-700 through 6-708 (West 2012)), which bars a party state from issuing a license to an individual while a license issued by another party state is suspended (625 ILCS 5/6-704 (West 2012)). In reversing the dismissal of the charge, the *Masten* court reasoned as follows:

    "The question before us is whether defendant's license should be considered 'suspended', thereby rendering the issuance of the Virginia license invalid under the

Compact. We conclude that defendant's license was in fact 'suspended' on June 9, 1989, that defendant's Virginia license was invalid under the Compact, and that the trial court improperly dismissed the driving while license revoked charge. Were we to hold otherwise, it would lead to the absurd result that one whose license has been previously revoked could avoid the effect of the summary suspension by obtaining a license in a foreign State as defendant did in this case." *Masten*, 219 Ill. App. 3d at 174-75.

¶ 14　　The *Masten* court "understood what is obvious from the Code and the case law. A revoked driver can be suspended; a suspended driver can be revoked; and a revoked driver can be revoked again and again, as defendant was in the instant case." *Heritsch*, 2012 IL App (2d) 090719, ¶ 50 (Birkett, J., dissenting). That understanding is at least implicit in cases such as *People v. Yaworski*, 2011 IL App (2d) 090785, ¶ 8 (noting that the abstract of the defendant's driving record showed that his license was revoked pursuant to section 6-205(a)(2) of the Code on August 6, 2005, and again on August 12, 2005, and that "the *revocations*" (emphasis added) were in effect when the defendant committed his seventh DUI, thereby enhancing that offense to a Class 2 felony under section 11-501(c-1)(3) of the Code (625 ILCS 5/11-501(c-1)(3) (West 2004))), and *People v. Smith*, 162 Ill. App. 3d 739, 741 (1987) ("At trial, the State introduced as evidence three separate orders of revocation, certified by the Secretary of State, all of which were for driving under the influence of intoxicating liquor and all of which were in effect on February 3, 1986.").

¶ 15　　Here, defendant would have us hold, contrary to *Masten*, that, because of the revocation of his license, he had no license that could be subject to a statutory summary suspension. By dint of that reasoning, a driver whose license is revoked and never reissued would have no incentive to comply with the implied consent law. Such a driver, if arrested for DUI, could, without consequence, refuse the chemical testing provided for by the implied consent law and could theoretically apply for a new driver's license during the period when an otherwise similarly situated *licensed* driver would be prohibited from driving. It is inconceivable that the General Assembly intended such an utterly incongruous result. Moreover, under the analysis that defendant advocates, a DUI conviction in such a case would not preclude the defendant from immediately applying for a new license. Such a result "makes a mockery of the law." *Heritsch*, 2012 IL App (2d) 090719, ¶ 59 (Birkett, J., dissenting).

¶ 16　　Our conclusion also finds support in our decision in *People v. Odumuyiwa*, 188 Ill. App. 3d 40 (1989). In that case, the defendant was convicted of DWLS. The record showed that the defendant's license had been cancelled about two weeks before it was suspended. The defendant argued that, because the cancelled license was no longer in force, the suspension of the license was a null act. We disagreed, seeing "no reason why these two actions [the cancellation and the suspension of the defendant's license] by the Secretary should be considered mutually exclusive or logically inconsistent." *Id.* at 45.

¶ 17　　During the pendency of this appeal, our General Assembly amended section 6-303. See Pub. Act 98-418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013). Among other things, the General Assembly added subsection (a-10), which provides:

"A person's driver's license, permit, or privilege to obtain a driver's license or permit may be subject to multiple revocations, multiple suspensions, or any combination of both

-7-

simultaneously. No revocation or suspension shall serve to negate, invalidate, cancel, postpone, or in any way lessen the effect of any other revocation or suspension entered prior or subsequent to any other revocation or suspension." Pub. Act 98-418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013).

Defendant argues that the amendment is presumed to change the law as it previously existed and that the amendment represents the General Assembly's "tacit acceptance of the [*Heritsch*] majority's interpretation of the statute, insofar as the legislature took efforts to correct what it perceived to be a defect in the statute." To accept that reasoning, however, would create a catch-22 for the General Assembly; it is clear that, had the General Assembly amended section 6-303 *without* adding subsection (a-10), or other language to that effect, defendant would have been able to argue that the *failure* to amend the statute represented legislative acquiescence in the *Heritsch* majority's interpretation. See, *e.g.*, *People v. Downs*, 371 Ill. App. 3d 1187, 1191 (2007) ("It is axiomatic that where a statute has been judicially construed and the construction has not evoked an amendment, it will be presumed that the legislature has acquiesced in the court's exposition of the legislative intent."). Thus, although amendatory acts are ordinarily *presumed* to change the law, "that presumption is overcome where the nature of [the] amendment suggests that its drafters intended to interpret or clarify the original statute." *Friedman v. Krupp Corp.*, 282 Ill. App. 3d 436, 444 (1996). The nature of the amendment in this case suggests clarification of the General Assembly's preexisting intent and a repudiation of the interpretation adopted by the *Heritsch* majority.

¶ 18    We note that the General Assembly has had occasion in the past to clarify its intent with regard to section 6-303's sentencing scheme. Prior to August 10, 2001, section 6-303(d) provided, "Any person convicted of a second *or subsequent* violation of this Section shall be guilty of a Class 4 felony if the *original* revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar out-of-state offense, or a statutory summary suspension under Section 11-501.1 of this Code." (Emphases added.) 625 ILCS 5/6-303(d) (West 2000). The General Assembly deleted the emphasized words when it amended the statute to add subsections (d-1) through (d-3) (which provided further escalation of the penalties for repeat offenders). See Pub. Act 92-340, § 5 (eff. Aug. 10, 2001). In *People v. Bloomberg*, 378 Ill. App. 3d 686 (2008), the court relied on the deletion of the word "original" to uphold a Class 4 felony conviction for a motorist whose first violation of section 6-303 did not occur while his license was suspended or revoked for one of the specified reasons. The *Bloomberg* court rejected the defendant's argument that its reading led to an unjust and absurd result. *Id.* at 688-89. Thereafter, however, the General Assembly promptly restored the word "original" to section 6-303(d) (see Pub. Act 95-991, § 5 (eff. June 1, 2009)), recognizing that "when it omitted the word 'original' from subsection (d), a defendant like Bloomberg with only one prior DWLS violation, no matter the reason for the suspension, would be subject to felony sentencing for only his second violation, an admittedly harsh result." *Heritsch*, 2012 IL App (2d) 090719, ¶ 34 (Birkett, J., dissenting). Section 6-303(d-5), in contrast, has *never* expressly conditioned the penalty on the reason for the "original" revocation or suspension. This distinction between section 6-303(d) and

section 6-303(d-5) makes it all the more clear that: (1) in cases of multiple revocations or suspensions, the latter provision was always meant to apply without regard to the reason for the "original" revocation or suspension and (2) the recent amendment of section 6-303(d-5) was a reaction to *Heritsch*'s erroneous interpretation of that provision.

¶ 19      For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded for further proceedings.

¶ 20      Reversed and remanded.