2016 IL App (1st) 122954

SECOND DIVISION
May 17, 2016

No. 1-12-2954

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 11 CR 16790 |
| | ) | |
| KEITH VIVERETTE, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Neville and Simon concurred in the judgment and opinion.

**OPINION**

¶ 1    By way of information, defendant Keith Viverette was charged with 12 counts of driving while his license was suspended or revoked (DWLR) in violation of five different subsections of section 6-303 of the Illinois Vehicle Code (Code). 625 ILCS 5/6-303(a) (West 2010)[1].  Each count notified the defendant that upon conviction the State would seek an enhanced felony sentence based upon the basis of the revocation (violation of section 11-401 of the Code) or suspension (violation of section 11.501.1 of the Code) and the number of defendant's previous convictions for violation of section 6-303 as authorized by sections 6-303(d-2), (d-3), (d-4), and (d-5).  625 ILCS 5/6-303(d) (West 2010).  The defendant was found guilty of all counts which

---

[1]    The version of section 6-303(a) referenced herein has an effective date of July 11, 2011.  625 ILCS 5/6-303(a).

the trial court merged into count I, a Class 2 felony. Based on defendant's 14 previous convictions for DWLR, the court sentenced the defendant to six years' imprisonment as a mandatory Class X offender. Defendant now appeals and argues: (1) his felony conviction must be reduced to a misdemeanor conviction because the first revocation of his driver's license was not for a specified offense listed in section 6-303(d-5) of the Code (625 ILCS 5/6-303(d-5) (West 2010) and, because his license was never reinstated, any subsequent license revocations listed on his driving abstract had no effect; (2) his 3-year term of mandatory supervised release (MSR) should be vacated because it was improperly imposed by the Department of Corrections (DOC); and (3) his mittimus should be corrected to reflect only one conviction for DWLR. For the following reasons, we affirm the judgment of the circuit court, remand with directions to correct the sentencing order in conformity with section 5-8-1(d) of the Unified Code of Corrections (730 ILCS 5/5-8-1(d) (West 2012)) and correct the mittimus to show only one conviction for DWLR.

¶ 2                                      BACKGROUND

¶ 3       Chicago police officer Desai testified that defendant was pulled over on September 28, 2011, after he observed defendant driving a green Cadillac Seville with a broken taillight. When Officer Desai asked defendant for his driver's license and insurance, defendant could provide neither. Defendant was arrested, and when Officer Desai ran defendant's name and date of birth, he discovered that defendant's driving privileges had been revoked and one of the revocations was for leaving the scene of an accident involving a death or injury.

¶ 4       At trial, the State introduced a copy of defendant's driving abstract showing that his driver's license was revoked on September 2, 1989, following a conviction for possession of a stolen motor vehicle. After the 1989 revocation, the abstract further showed that defendant's

license had never been reinstated. The abstract also showed that defendant's license was revoked on February 24, 1992, for leaving the scene of an accident involving death or injury.

¶ 5    Defendant testified that he was walking on the sidewalk approaching a car when the police asked him if he "was in the vehicle" and he replied "yes" but denied being inside the car. When defendant could not produce a license or proof of insurance, the officers informed him that the license plates were not registered to the car. The parties stipulated to defendant's 2008 Class 4 possession of a controlled substance conviction.

¶ 6    After hearing defendant's testimony, the trial court found defendant guilty, finding Officer Desai's testimony was "extremely credible" while defendant's testimony was "not credible at all." At sentencing, the parties agreed the offense was a Class 2 felony, however, in his motion to reconsider sentence, defendant maintained he was not eligible for an enhanced or extended-term sentence. Defendant was sentenced as a Class X offender based on his prior convictions to the minimum term of six years' imprisonment. 730 ILCS 5/5-4.5-95(b) (West 2012). The trial court did not mention a term of MSR at sentencing, nor does the mittimus show that a term of MSR was imposed.

¶ 7                                ANALYSIS

¶ 8    Defendant first argues that his conviction for aggravated DWLR must be reduced from a felony conviction under section 6-303(d-5) of the Code (625 ILCS 5/6-303(d-5) (West 2010) to a Class A misdemeanor because his driver's license could not be revoked for leaving the scene of an accident. Defendant argues his license was first revoked in 1989 for possession of a motor vehicle and it was never reinstated. Because his license was never reinstated, any "revocations" or "suspensions" of his nonexistent license that occurred after 1989, including the 1992

revocation for leaving the scene of an accident involving death or injury, had no effect on the status of his previously revoked license. Therefore, the 1992 revocation cannot be used as the required aggravating factor under section 6-303(d-5) (625 ILCS 5/6-303(d-5) (West 2010).

¶ 9   The question presented is one of statutory construction which we review *de novo. In re Detention of Hardin,* 238 Ill. 2d 33, 40 (2010). In doing so, we ascertain and give effect to the legislature's intent and purpose by construing the statute so that no part is rendered meaningless or superfluous. *People v. Lloyd*, 2013 IL 113510, ¶ 25. We presume the legislature did not intend absurdity or injustice when it enacted the statute under review. *People v. Perez,* 2014 IL 115927, ¶ 9.

¶ 10   Defendant was convicted of DWLR. 625 ILCS 5/6-303(a) (West 2010). The offense is a Class A misdemeanor. However, pursuant to section 6-303(d-5), the offense was charged as a Class 2 felony. Section 6-303(d-5) is a sentencing enhancement (*People v. Nunez*, 236 Ill. 2d 488, 499 (2010)) and provides:

> "Any person convicted of a fifteenth or subsequent violation of this Section
> is guilty of a Class 2 felony, and is not eligible for probation or conditional discharge, if
> the revocation or suspension was for a violation of Section 11-401 [(leaving the scene of
> an accident involving injury or death)] or 11-501 of this Code ([driving under the
> influence)] [(625 ILCS 5/11-401, 11-501 (West 2010))], or a similar out-of-state offense,
> or a similar provision of a local ordinance, or a statutory summary suspension or
> revocation under Section 11-501.1 of this Code [(625 ILCS 5/11-501.1 (West 2010))]."
> 625 ILCS 5/6-303(d-5) (West 2010).

¶ 11   Defendant does not contest that he has 14 previous convictions for DWLR, that his

license was revoked in 1989 or that his driver's abstract reflects a 1992 section 11-401 revocation for leaving the scene of an accident involving death or personal injury. Instead, defendant argues that because his license was revoked in 1989 and was never reinstated, his license could not be again revoked in 1992 when he was convicted of leaving the scene of an accident involving death or personal injury. In support of his argument, defendant relies on *People v. Heritsch*, 2012 IL App (2d) 090719 (Birkett, J., dissenting). The State argues *Heritsch* was wrongly decided and that *People v. Smith,* 2013 IL App (2d) 121164 and *People v. Webber*, 2014 IL App (2d) 130101 (McLaren, J., dissenting) correctly interpret and apply section 6-303(d-5) and support the Class 2 conviction and enhanced sentence imposed in this case.

¶ 12    The Second District Appellate Court has issued a trilogy of divergent opinions on the issue of whether section 6-303(d-5) contemplates one revocation or multiple revocations for sentencing enhancement purposes. In *People v. Heritsch*, 2012 IL App (2d) 090719 the defendant's 2008 offense of DWLR was enhanced to a Class 2 felony under section 6-303(d-5), because the defendant had at least 14 previous convictions for DWLR and his license was revoked in 2001 for a driving under the influence (DUI) conviction under section 11-501. 625 ILCS 5/11-501 (West 2008). Heritsch's first license revocation was in 1991 for using a motor vehicle to commit a drug-related offense. His driver's license was never reinstated after 1991. Employing customary principles of statutory construction and considering relevant provisions of the vehicle code, the *Heritsch* majority found that a license revocation terminates a person's license or privilege to drive and a revocation is restored only upon application and action by the Secretary of State pursuant to section 1-176 of the Code. 625 ILCS 5/1-176 (West 2008); *Heritsch*, 2012 IL App (2d) 090719, ¶ 8. The majority noted that the parties agreed section 6-

303(d-5) was unambiguous but observed that it was silent as to whether section 6-303(d-5) pertained to multiple revocations. *Id*. The majority determined that the term "the revocation" implied "that there is only one pertinent triggering event" for the revocation: the 1991 drug related offense, not the 2001 DUI offense. (Emphasis omitted.) *Id.* ¶ 10. The *Heritsch* majority concluded that defendant's license could only be revoked once (in 1991) and because his license was never reinstated, "the revocation" was based on defendant's 1991 drug conviction, not his 2001 DUI conviction. *Id.* ¶¶ 10, 11. The *Heritsch* court found that because the 1991 revocation was not for either DUI or leaving the scene of a death or personal injury accident, an enhancement under section 6-303(d-5) was not triggered, so that the 2001 revocation for DUI could not stand as a triggering offense under section 6-303(d-5). 625 ILCS 5/6-303(d-5) (West 2008).

¶ 13    Subsequently, different panels from the Second District rejected the *Heritsch* interpretation of section 6-303(d-5) in *People v. Smith,* 2013 IL App (2d) 121164, and *People v. Webber*, 2014 IL App (2d) 130101.

¶ 14    In *Smith*, the defendant argued that the statutory summary suspension was a nullity and therefore could not be used to enhance the DWLR charge to a felony. *Smith*, 2013 IL App (2d) 121164, ¶ 2. The *Smith* court observed that the question presented was one of statutory interpretation and stated that "[w]hen the language of the statute is clear and unambiguous, courts may not depart from the language by incorporating exceptions, limitations, or conditions that the General Assembly did not express." *Id*. ¶ 9. The court noted however, that a literal interpretation of a statute is not controlling where:

" 'the spirit and intent of the General Assembly in enacting a statute is clearly expressed,

its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statue will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result [citation].' " *Id*. (quoting *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263, 266-67 (2004)).

¶ 15    Following this rule of construction, the *Smith* court acknowledged that "[i]f the statutory definition of 'revocation'–the termination *** of a person's *** license or privilege to operate a vehicle is terminated, it no longer exists and therefore cannot again be terminated." (Emphasis and internal quotation marks omitted.) *Id*. ¶ 11.  However, the court rejected this interpretation after an examination of the Code as a whole.  The court referenced portions of the Code that would be rendered meaningless or superfluous unless the Code contemplated multiple revocations (*id*. ¶ 12) and concluded that the legislature did not intend for the term "revocation" to be read literally (*id*. ¶¶ 12, 13).  In addition, the court identified absurd results that would occur as a result of a literal reading of "revocation" as a singular occurrence.  "To the contrary, 'revocation' appears to be used, in part, as a term of art that refers to a formal act of the Secretary and its attendant legal consequences."  *Id*. ¶ 11.  For these reasons, the *Smith* court rejected *Heritsch* and concluded that there was no limited number of times a license could be revoked and that the triggering revocation in section 6-303(d-5) was not limited to instances where no prior revocation was in effect.  *Id*.  We are mindful that the *Smith* court adopted the reasoning and rationale of the dissent filed in *Heritsch* and that the author of both *Smith* and the dissent in *Heritsch* were the same justice.

¶ 16    The majority in *Webber* adopted the reasoning in *Smith* and declined to follow *Heritsch*. We also acknowledge that the dissenting justice in *Webber* was in the majority in *Heritsch*. That stated, the *Webber* court, following *Smith*, noted that during the pendency of the defendant's appeal, the General Assembly amended section 6-303 of the Code. Pub. Act 98-0418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-0573, § 5 (eff. Aug. 27, 2013). Among other amendments, the legislature added subsection (a-10), which provides:

"A person's driver's license, permit, or privilege to obtain a driver's license or permit may be subject to multiple revocations, multiple suspensions, or any combination of both simultaneously. No revocation or suspension shall serve to negate, invalidate, cancel, postpone, or in any way lessen the effect of any other revocation or suspension entered prior or subsequent to any other revocation or suspension." Pub. Act 98-0418, § 5 (eff. Aug. 16, 2013). See also Pub. Act 98-0573, § 5 (eff. Aug. 27, 2013).

¶ 17    In addition to agreeing with the *Smith* court's reasoning in general, the *Webber* court cited approvingly to *Smith*'s finding that the amendment reflected in Public Acts 98-0418 and 98-0573 " 'suggests clarification of the General Assembly's preexisting intent and a repudiation of the interpretation adopted by the *Heritsch* majority.' " *Webber*, 2014 IL App (2d) 130101, ¶ 13 (quoting *Smith*, 2013 IL App (2d) 121164, ¶ 17).

¶ 18    We agree with the reasoning in *Smith* and the *Webber* majority with respect to whether section 6-303(d-5) contemplates multiple revocations for offense and sentencing enhancement purposes. Therefore, we find that any qualifying revocation could serve as a trigger to enhance the DWLR to a Class 2 felony under section 6-303(d-5). In our view, where the Secretary of

State has revoked driving privileges for any violation listed in section 6-303(d), the revocation remains in effect until application for a new license is presented and acted upon favorably by the Secretary pursuant to section 1-176 of the Code. 625 ILCS 5/1-176 (West 2012). The Illinois Administrative Code requires a hearing to establish eligibility for driving privilege reinstatement after revocation. *Heritsch*, 2012 IL App (2d) 090719, ¶ 28 (Birkett, J., dissenting) (citing 92 Ill. Adm. Code 1001.440 (2012)). A reasonable conclusion is that a reinstatement hearing would not be required if a revocation was not effective where it was imposed after a previous revocation or suspension. To hold otherwise would render the statute meaningless, particularly where multiple revocations are expressly allowed under section 6-303(a-10), which was added after *Heritsch* was decided, indicating a repudiation of the result in *Heritsch*. Pub. Act 98-0418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-0573, § 5 (eff. Aug. 27, 2013); *People v. Smith,* 2013 IL App (2d) 121164, ¶ 17.

¶ 19     Section 6–303(d) is the substantive provision that allows the State to seek the enhanced sentencing. *People v. Lucas*, 231 Ill. 2d 169, 180 (2008). Looking at the scheme of section 6-303(d) as it existed at the time of defendant's 2011 DWLR offense, it is clear that the legislature intended to increase the class of offense and the resultant penalty by varying degrees based on the number of prior convictions for DWLR. For example, a *second* DWLR conviction is a Class 4 felony with a mandatory minimum sentence of "minimum term of imprisonment of 30 days or 300 hours of community service, as determined by the court, if the original revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d)(2) (West 2010). A

*fourth, fifth, sixth, seventh, eighth, or ninth* DWLR conviction is also a Class 4 felony, however, the sentence is "minimum term of imprisonment of 180 days if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of the Code." 625 ILCS 65/6-303(d-3) (West 2010). A *tenth, eleventh, twelfth, thirteenth, or fourteenth* DWLR conviction is a Class 3 felony and the defendant is not eligible for probation or conditional discharge, if the revocation or suspension was "for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of the Code. 625 ILCS 5/6-303(d-4) (West 2010). Section 6-303(d) is unambiguously aimed at enhancing the offense classification and penalties for persons who continue to drive while their driving privileges have been, and continue to be, revoked or suspended. As the number of prior offenses rises, so does the class of offense and corresponding penalty.

¶ 20     In this case, this is defendant's *fifteenth* conviction resulting in an offense classification of a Class 2 felony and he is "not eligible for probation or conditional discharge, if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d-5) (West 2010).   It is defendant's 1992 revocation for leaving the scene of an accident involving death or personal injury and his fifteenth DWLR conviction that elevated his offense to a Class 2 felony. In light of the legislature's intention to deal harshly with repeat offenders, especially where an offender has a conviction and revocation for leaving the scene of a death or personal injury accident,

defendant's argument would have an absurd result: defendant's earlier 1989 license revocation for a drug offense would shield him from the legislative intention of imposing an elevated Class 2 offense for serial illegal driving after having his driving privileges revoked for leaving the scene of a death or personal injury accident in 1992. We reject defendant's argument and affirm his conviction of Class 2 felony DWLR.

¶ 21     Next, defendant contends that because the trial court did not impose a term of MSR, the DOC could not have added on a period of MSR. This exact issue was recently considered and rejected in *People v. McChriston*, 2014 IL 115310.

¶ 22     In *McChriston,* the defendant was sentenced in 2004 to a mandatory Class X sentence. The court did not mention MSR at sentencing and there was no reference made to MSR in the sentencing order. *Id*. ¶ 1. The defendant filed a *pro se* section 2-1401 petition for relief (735 ILCS 5/2-1401 (West 2010)) arguing the DOC impermissibly added a 3-year MSR term to his 25-year sentence. *McChriston*, 2014 IL 15310, ¶ 3. This court affirmed the trial court's dismissal of the petition for failing to state a claim (*People v. McChriston*, 2012 IL App (4th) 110319-U), concluding the MSR term attached by operation of law and was not unconstitutionally imposed by the DOC. *McChriston*, 2014 IL 115310, ¶ 4. On appeal to our supreme court, McChriston argued that where the trial court fails to mention MSR at sentencing or fails to include a term of MSR in the sentencing order, the DOC lacks authority to impose a term of MSR after the defendant serves his full sentence. The *McChriston* court rejected this argument, finding that customary rules of statutory construction applied and that the plain and ordinary meaning of the applicable version of section 5-8-1(d) (730 ILCS 5/5-8-1(d) (West 2004)) ("[e]xcept where a term of natural life is imposed, every sentence shall include as though written therein a term in

addition to the term of imprisonment") was unambiguous. *McChriston*, 2014 IL 115310, ¶ 9. The MSR term was included automatically in the sentence, even when the trial court did not mention MSR at sentencing and did not include MRS in the sentencing order. *Id*. ¶¶ 17, 23. The supreme court referenced the 2011 amendment to section 5-8-1(d), which demonstrated a legislative intent "to require that the judge specify the MSR term in writing in the sentencing order." *Id*. ¶ 21.

¶ 23    Here, defendant was sentenced after the effective date of the amendment to section 5-8-1(d). Effective January 1, 2012, section 5-8-1(d)(1) was amended by deleting the "as though written therein" phrase to now require "the parole or mandatory supervised release term *shall be written as part of the sentencing order*." (Emphasis added.) Pub. Act 97-531 (eff. Jan. 1, 2012) amending 730 ILCS 5/5-8-1(d) (West 2012)). This was the applicable statute when defendant was sentenced on September 14, 2012.

¶ 24    We note that section 5-4.5-15(c) of the Code provides, in pertinent part, "every sentence includes a term in addition to the term of imprisonment. For those sentenced on or after February 1, 1978, that term is a mandatory supervised release term." 730 ILCS 5/5-4.5-15(c) (West 2012). Section 5-8-1(d)(1) read in conjunction with section 5-4.5-15(c) makes it clear that the MSR term was a mandatory component of defendant's sentence and that it was imposed by the court and not the DOC. *People v. Hunter*, 2011 IL App (1st) 093023, ¶ 23. Although the MSR term was not included as part of defendant's sentencing order in this case, *McChriston* is clear that whether section 5-8-1(d) is viewed pre- or postamendment, its legislative history reflects that a term of MSR is part of every qualifying sentence regardless of whether the term is mentioned during sentencing or omitted from the sentencing order. *McChriston*, 2014 IL 115310, ¶¶ 18-21.

Because defendant was sentenced as a Class X offender due to his criminal background, the three-year MSR term applicable to the Class X conviction was part of his sentence. 730 ILCS 5/5-4.5-15(c), 5-8-1(d)(1) (West 2012); *People v. Watkins*, 387 Ill. App. 3d 764, 766-67 (2009). The fact that it was not included on the order does not negate the term of MSR in any way. Rather, the appropriate remedy is to vacate the term of MSR added by the DOC and remand to the trial court with directions to correct the sentencing order to reflect the MSR term provided under section 5-8-1(d) of the Code. See *People v. Ford,* 2014 IL App (1st) 130147, ¶ 8.

¶ 25    Finally, defendant argues, and the State agrees, that defendant's mittimus should reflect a finding of guilty only on count I where the trial court explicitly merged the other 11 counts at defendant's sentencing hearing. Normally, we would assert our power under Illinois Supreme Court Rule 615(b)(1), and direct the clerk of the circuit court to correct defendant's mittimus, however, because we are remanding for the court to correct defendant's sentencing order with respect to MSR, we order the court to also correct defendant's mittimus to reflect one conviction for DWLR.

¶ 26                              CONCLUSION

¶ 27    Accordingly, we vacate the MSR term imposed by the DOC and otherwise affirm the trial court's judgment. We remand with directions to correct the sentencing order to conform with section 5-8-1(d) of the Code (730 ILCS 5/5-8-1(d) (West 2012)) and to correct the mittimus to reflect a finding of guilty on only count I.

¶ 28    Affirmed in part and vacated in part, and the cause is remanded with directions.