# Illinois Official Reports

## Appellate Court

***People v. Webber*, 2014 IL App (2d) 130101**

| | |
|---|---|
| Appellate Court Caption | PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. NICHOLAS C. WEBBER, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0101 |
| Filed | May 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court dismissed an indictment charging defendant with felony driving while his license was revoked on the ground that defendant's license had been revoked in 1996, prior to the revocation that appeared on his record and was used in the instant case to enhance his offense to a felony, and in view of the decision of the Illinois Appellate Court in *Heritsch*, the fact that defendant never reinstated his license after the earlier revocation left defendant with no license to be revoked when the later revocation was issued, but the appellate court in defendant's case reversed the dismissal and remanded the case for further proceedings after finding that *Heritsch* was incorrectly decided and holding that the interpretation of the statute adopted by *Heritsch* defeated the legislature's obvious intent and resulted in great injustice. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-CF-1205; the Hon. Daniel P. Guerin, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Robert B. Berlin, State's Attorney, of Wheaton (Lisa A. Hoffman and
Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the
People.

Thomas A. Lilien and Sherry R. Silvern, both of State Appellate
Defender's Office, of Elgin, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with
opinion.
Presiding Justice Burke concurred in the judgment and opinion.
Justice McLaren dissented, with opinion.

**OPINION**

¶ 1    The State appeals from an order of the circuit court of Du Page County dismissing count I of an indictment against defendant, Nicholas C. Webber, which charged him with felony driving while his license was revoked (DWLR) (625 ILCS 5/6-303(d-2) (West 2012)). Count I alleged that "defendant drove or was in actual physical control of a motor vehicle on a highway in Illinois at a time when his driver's license, permit, or privilege to operate a motor vehicle was revoked, where the revocation was based upon defendant's conviction [of driving under the influence of alcohol or other drugs (DUI) (625 ILCS 5/11-501(a) (West 2012))], said defendant having been previously convicted two times of Driving While License Revoked or Driving While License Suspended." Defendant moved to dismiss on the basis that his license had been revoked in 1996 because of a violation of section 4-102 of the Illinois Vehicle Code (Code) (625 ILCS 5/4-102 (West 1996)), which proscribes, *inter alia*, damaging, tampering, or removing parts from a motor vehicle. Although defendant's driving record indicated that his license was later revoked for DUI, defendant noted that he had never received a new license after the 1996 revocation. He argued that, pursuant to *People v. Heritsch*, 2012 IL App (2d) 090719, the revocation for DUI that appeared on his driving record was of no effect and therefore could not be the basis for enhancing DWLR to a felony. The State argues on appeal that *Heritsch* was decided incorrectly. We agree, and we therefore reverse the dismissal order and remand for further proceedings.

¶ 2    As pertinent here, section 6-303(a) of the Code (625 ILCS 5/6-303(a) (West 2012)) provides that "any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or the law of another state, except as may be specifically allowed by a judicial driving permit issued prior to January 1, 2009, monitoring device driving permit, family financial responsibility driving permit, probationary license to drive, or a restricted driving permit issued pursuant to this Code or under the law of another state, shall be guilty

of a Class A misdemeanor." Pursuant to section 1-176 of the Code, "revocation" of a driver's license means "[t]he termination by formal action of the Secretary of a person's license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the Secretary after the expiration of at least one year after the date of revocation." 625 ILCS 5/1-176 (West 2012).

¶ 3    At the time of the alleged offense in this case, subsections (d-2), (d-3), (d-4), and (d-5) of section 6-303 provided for escalating penalties based on the number of prior convictions "if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, or a similar out-of-state offense, or a similar provision of a local ordinance, or a statutory summary suspension or revocation under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d-2), (d-3), (d-4), (d-5) (West 2012).[1] Section 11-401 imposes certain duties on motorists involved in accidents and, as noted, section 11-501 is the DUI statute. Under section 11-501.1, the so-called "implied consent law," a motorist operating a vehicle on a public highway in Illinois is deemed to have consented, if arrested for DUI, to chemical testing to determine his or her blood alcohol level. Refusal to undergo testing, or submission to a test that reveals a blood alcohol level of 0.08 or more, results in the summary suspension of the motorist's driving privileges. Defendant was charged under section 6-303(d-2), which provided that a defendant convicted of a third violation of section 6-303(a) was guilty of a Class 4 felony. 625 ILCS 5/6-303(d-2) (West 2012).

¶ 4    In *Heritsch*, the defendant's conviction of DWLR was enhanced to a Class 2 felony under section 6-303(d-5). The offense occurred in 2008. Heritsch's license had been revoked in 1991 because he had used a motor vehicle to commit a drug-related felony. Heritsch never obtained a new driver's license. However, the abstract of Heritsch's driving record showed that, in 2001, he had violated section 11-501 of the Code–*i.e.*, he had committed the offense of DUI–and the Secretary of State revoked his license for that reason. Because the 1991 revocation was not for one of the reasons that triggered an enhanced sentence under section 6-303(d-5), the validity of Heritsch's felony conviction depended on whether he was eligible for an enhanced sentence on the basis of the 2001 revocation for DUI. The *Heritsch* majority in essence concluded that, because his license had been revoked in 1991 and he never applied for a new license, there was no license that could be revoked when Heritsch committed DUI in 2001. Therefore, according to the majority, "the Secretary's 2001 formal administrative sanction of revocation had no effect." *Heritsch*, 2012 IL App (2d) 090719, ¶ 9.

¶ 5    As noted, the State urges us to depart from the *Heritsch* majority's holding. Defendant, after summarizing the majority opinion in *Heritsch*, asserts it was "well-reasoned and supported by statute and case law." The major premise of defendant's argument, however, is simply that principles of *stare decisis* dictate that we adhere to *Heritsch*'s holding.

---

[1]At present, each of the prior convictions must also have occurred while the defendant's license was suspended or revoked for one of these reasons. See Pub. Act 98-418, § 5 (eff. Aug. 16, 2013) (amending 625 ILCS 5/6-303(d-2), (d-3), (d-4), (d-5)); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013) (amending 625 ILCS 5/6-303(d-2), (d-3), (d-4), (d-5)). We note that, under Illinois law, "[i]f any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect." 5 ILCS 70/4 (West 2012).

¶ 6    We note that in *People v. Smith*, 2013 IL App (2d) 121164, which was decided during the pendency of this appeal, a different panel of this court had occasion to consider the same issue presented in *Heritsch* and in this case. The *Smith* court concluded that the holding in *Heritsch* was incorrect. The *Smith* court prefaced its analysis with the following observation:

> "[A]lthough the trial court was required to follow *Heritsch* [citation], we are not bound to do so. Our supreme court has noted:
>
>> ' " '*[S]tare decisis* requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts.' " [Citation.] Thus, the opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels. [Citation.]' " *Id.* ¶ 7 (quoting *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)).

¶ 7    In *Smith*, the defendant was charged with, *inter alia*, driving while his license was suspended (DWLS) (625 ILCS 5/6-303(a) (West 2012)). That offense was charged as a Class 2 felony pursuant to section 6-303(d-5). The charging instrument originally alleged that on or about January 25, 2012, Smith " 'operated a motor vehicle upon a road in North Aurora *** at a time when [his] driver's license was suspended or revoked for a violation of Illinois Compiled Statutes Chapter 625, Act 5, Section 11-501 and after having fourteen or more prior violations for the offense of driving while license was revoked or suspended.' " *Smith*, 2013 IL App (2d) 121164, ¶ 2. The State was subsequently permitted to amend the indictment to allege that Smith was driving while a statutory summary suspension of his license (see 625 ILCS 5/11-501.1 (West 2012)) was in effect. Smith moved for dismissal of the charge. At the hearing on the motion, he relied on an abstract of his driving record to establish that the statutory summary suspension was entered at a time when his driver's license had already been revoked. Relying on *Heritsch*, Smith argued that the statutory summary suspension was a nullity and therefore could not be used to enhance the DWLS charge to a felony.

¶ 8    Observing that the question presented was one of statutory interpretation, the *Smith* court recited the familiar principle that "[w]hen the language of a statute is clear and unambiguous, courts may not depart from the language by incorporating exceptions, limitations, or conditions that the General Assembly did not express." *Smith*, 2013 IL App (2d) 121164, ¶ 9. The court added, however, that " '[a] literal interpretation is not controlling where the spirit and intent of the General Assembly in enacting a statute are clearly expressed, its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statute will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result [citation].' " *Id.* (quoting *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263, 266-67 (2004)).

¶ 9    The *Smith* court acknowledged that "[i]f the statutory definition of 'revocation'–the '*termination *** of a person's license or privilege to operate a motor vehicle' (emphasis added) [citation]–is given its most literal meaning, the argument that revocation is a singular occurrence might appear to be an ontological truism: after one's license or privilege to operate a vehicle is terminated, it no longer exists and therefore cannot again be terminated." *Id.* ¶ 11. However, the court rejected that interpretation:

"It is reasonably clear from examination of the Code as a whole *** that the General Assembly did not intend for the term 'revocation' to be read so literally. To the contrary, 'revocation' appears to be used, in part, as a term of art that refers to a formal act of the Secretary and its attendant legal consequences. Thus, section 6-205(a) places no express limitation on the number of times the Secretary may revoke a driver's license. Nor does section 6-205(a) expressly limit revocation to cases where no prior revocation is in effect." *Id.*

The court identified provisions of the Code that would be either meaningless or at least partly superfluous unless the Code contemplated multiple revocations. *Id.* ¶ 12.

¶ 10 The *Smith* court also identified absurd results that would flow from a literal reading of "revocation" as a singular occurrence that foreclosed the possibility of either a future revocation or a future suspension:

"[A] driver whose license is revoked and never reissued would have no incentive to comply with the implied consent law. Such a driver, if arrested for DUI, could, without consequence, refuse the chemical testing provided for by the implied consent law and could theoretically apply for a new driver's license during the period when an otherwise similarly situated *licensed* driver would be prohibited from driving. It is inconceivable that the General Assembly intended such an utterly incongruous result. Moreover, *** a DUI conviction in such a case would not preclude the defendant from immediately applying for a new license. Such a result 'makes a mockery of the law.' [Citation.]" (Emphasis in original.) *Id.* ¶ 15.

¶ 11 The dissent contends that this approach "treat[s] the law as if it were ambiguous" but then fails to apply the rule of lenity, as would be required by such ambiguity. *Infra* ¶ 27. This is simply not the case. Like the court in *Smith* (and as agreed by everyone–both parties, the majority, and the dissent–in *Heritsch*), we find the statute unambiguous. Ambiguity exists where a statute is capable of two or more reasonable interpretations. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. Moreover, in determining whether the words of a statute are ambiguous, the statute must be read as a whole. *People ex rel. Madigan v. Kole*, 2012 IL App (2d) 110245, ¶ 31. Thus, the mere act of reading the various parts of the Code together in no way implies that the statute is ambiguous. For the reasons stated in *Smith*, we find that the *Heritsch* majority's reading of the statute was not reasonable and agree that the statute is not ambiguous. Accordingly, the rule of lenity is not applicable here.

¶ 12 The *Smith* decision is not the only significant development that occurred during the pendency of this appeal. In addition, our General Assembly amended section 6-303. See Pub. Act 98-418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013). Among other things, the General Assembly added subsection (a-10), which provides:

"A person's driver's license, permit, or privilege to obtain a driver's license or permit may be subject to multiple revocations, multiple suspensions, or any combination of both simultaneously. No revocation or suspension shall serve to negate, invalidate, cancel, postpone, or in any way lessen the effect of any other revocation or suspension entered prior or subsequent to any other revocation or suspension." Pub. Act 98-418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013).

¶ 13 The defendant in *Smith* contended that the amendment represented the General Assembly's " 'tacit acceptance of the [*Heritsch*] majority's interpretation of the statute,

insofar as the legislature took efforts to correct what it perceived to be a defect in the statute.' " *Smith*, 2013 IL App (2d) 121164, ¶ 17. The *Smith* court disagreed:

> "[A]lthough amendatory acts are ordinarily *presumed* to change the law, 'that presumption is overcome where the nature of [the] amendment suggests that its drafters intended to interpret or clarify the original statute.' [Citation.] The nature of the amendment in this case suggests clarification of the General Assembly's preexisting intent and a repudiation of the interpretation adopted by the *Heritsch* majority." (Emphasis in original.) *Id.*

¶ 14    We agree with the analysis in *Smith* and therefore decline to follow *Heritsch*. Accordingly, we reverse the judgment of the circuit court of Du Page County and remand for further proceedings.

¶ 15    Reversed and remanded.

¶ 16    JUSTICE McLAREN, dissenting.

¶ 17    The majority does not believe that the legislature means what it says, even when the legislature *defines* what it says. Because the majority goes out of its way to make sure that the legislature means what the *majority* says, I must dissent.

¶ 18    Quoting *Smith*,[2] the majority maintains that " ' "revocation" ' " is a " 'term of art that refers to a formal act of the Secretary and its attendant legal consequences.' " S*upra* ¶ 9 (quoting *Smith*, 2013 IL App (2d) 121164, ¶ 11). However, neither *Smith* nor the majority here enlightens us with any rationale as to why this should be so. A term of art has "a specific, precise meaning in a given specialty, *apart from its general meaning in ordinary contexts.*" (Emphasis added.) Black's Law Dictionary 1483 (7th ed. 1999). As this court noted in *Heritsch*, the Code defines "revocation of driver's license" as "[t]he termination by formal action of the Secretary of a person's license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an application for a new license may be presented and acted upon by the Secretary after the expiration of at least one year after the date of revocation." 625 ILCS 5/1-176 (West 2012); see *Heritsch*, 2012 IL App (2d) 090719, ¶ 8. Webster's defines "revocation" in part as "the act by which one having the right annuls something previously done, a power or authority given, or a license, gift, or benefit conferred." Webster's Third New International Dictionary 1944 (1993). Black's defines "revocation" as "[a]n annulment, cancellation, or reversal, usu. of an act or power." Black's Law Dictionary 1321 (7th ed. 1999). All of these definitions involve the same concepts: termination, annulment, cancellation. There is nothing in the statutory definition that gives "revocation of driver's license" any specific, precise meaning apart from its general meaning in ordinary contexts. By definition, the statutory definition of "revocation," which is in accord with its common dictionary definition, is *not* a term of art.

¶ 19    The fundamental rule of statutory construction is to give effect to the legislature's intent, the best indication of which is the statutory language, *given its plain and ordinary meaning*. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). To give such meaning to words means to

_____

[2]Indeed, the majority does little more than quote from *Smith* and note its agreement with *Smith*'s analysis.

construe them with reference to the average, ordinary, normal, reasonable person. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 115 (1992). In my opinion, both *Smith* and the majority here fail to relate to the plain and ordinary meaning of the word "revocation" because they perceive and define it based upon the understanding of licensed attorneys and jurists. They have law licenses; a reasonable person does not. It is an oxymoron to claim that the plain and ordinary meaning of a word is a term of art. The majority, in stating that the word that it is defining is a "term of art," illustrates the oxymoron: it is applying to a plainly and ordinarily defined term an unorthodox meaning that a reasonable person not familiar with the unordinary meaning would not understand. For example, "the term 'joint custody' is really an oxymoron that somehow has obtained legislative approval." *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 419 (1994) (Steigmann, J., dissenting). So, too, has "revocation" obtained judicial approval by certain jurists.

¶ 20 I also find curious the majority's assertion that, "[f]or the reasons stated in *Smith*, we find that the *Heritsch* majority's reading of the statute was not reasonable and agree that the statute is not ambiguous." *Supra* ¶ 11. First, nowhere in *Smith* was the *Heritsch* court's reading described as "not reasonable" or "unreasonable." Second, the majority does not explain how applying a word as it is defined by statute and in accord with the plain and ordinary meanings provided in common-usage dictionaries can be unreasonable. Revocations are authorized in other statutes. Under circumstances enumerated in section 8 of the Firearm Owners Identification Card Act (430 ILCS 65/8 (West 2012)), the Department of State Police has the authority to "revoke and seize a Firearm Owner's Identification Card previously issued"; is such a revocation also a mere "formal act" on the part of the Department of State Police? If a person's card is revoked for a felony conviction, may it subsequently be revoked because the person becomes addicted to narcotics, even though the person has never even sought to obtain another card? See 430 ILCS 65/8(c), (d) (West 2012). Is the revocation of a card nothing more than an "ontological truism" or does it have a concrete meaning and real consequences?

¶ 21 The majority mentions in passing *Smith*'s claim that certain provisions of the Code would be "either meaningless or at least partly superfluous unless the Code contemplated multiple revocations." *Supra* ¶ 9. *Smith* contended:

> "[S]ection 6-208(b)(1.5) of the Code formerly provided, 'If the person is convicted of a violation of Section 6-303 of this Code committed while his or her driver's license, permit, or privilege was revoked because of a violation of Section 9-3 of the Criminal Code of 1961, relating to the offense of reckless homicide, or a similar provision of a law of another state, the person may not make application for a license or permit until the expiration of 3 years from the *effective date of the most recent revocation.*' (Emphasis added.) 625 ILCS 5/6-208(b)(1.5) (West 2008). The words 'most recent' would have been superfluous if the revocation of a driver's license were a singular occurrence." *Smith*, 2013 IL App (2d) 121164, ¶ 12.

"[F]ormerly provided"? Section 208(b)(1.5) was amended, effective January 1, 2008, removing the phrase "effective date of the most recent revocation" and replacing it with the phrase "date of the conviction." Pub. Act 95-377, § 5 (eff. Jan. 1, 2008) (amending 625 ILCS 5/6-208(b)(1.5) (West 2006)).

¶ 22 It is very interesting that a panel of this court would use an out-of-date statutory provision to support its current interpretation of a statute. It is puzzling that the panel would use an

out-of-date statutory provision that had been amended to specifically delete *the very words upon which the panel relied in its analysis* to support its position and affirm a criminal conviction. No words of section 6-208(b)(1.5) as it existed when the defendant in *Smith* was charged and when the opinion was written would have been rendered "superfluous" by the *Heritsch* analysis. *Smith*'s casual toss-in of "formerly provided" is negligent, at best.

¶ 23    *Smith* also argued that section 6-205(c)(2) of the Code (625 ILCS 5/6-205(c)(2) (West 2012)), involving ignition interlock devices and restricted driving permits for individuals "revoked *** due to 2 or more convictions," would be "meaningless" if *Heritsch* prevailed. (Emphasis and internal quotation marks omitted.) *Smith*, 2013 IL App (2d) 121164, ¶ 12. Sauce for the goose being sauce for the gander, I assert that nothing in section 6-205 of the Code as it formerly provided would be offended or rendered meaningless by *Heritsch*. See 625 ILCS 5/6-205 (West 2000). In fact, section 6-205(h) provided for ignition interlock devices when granting "driving relief" to "individuals who have been *arrested* [not revoked] for a second or subsequent offense." (Emphasis added.) 625 ILCS 5/6-205(h) (West 2000).

¶ 24    The claims that absurd results must ensue from the application of the *Heritsch* definition (see *Smith*, 2013 IL App (2d) 121164, ¶ 13; *Heritsch*, 2012 IL App (2d) 090719, ¶ 30 (Birkett, J., dissenting)) suggest that a defendant whose license was revoked because of a DUI would be inclined to apply for a license with impunity.[3] Such an enthymeme is valid only if it is completed with the additional premise that any application would be granted by the Secretary of State. Curiously, *Smith* implicitly assumes, contrary to law, that such an application would be successful. The Secretary is not required to issue a license to everyone who applies; the Secretary shall issue a license "to every *qualifying* applicant." (Emphasis added.) 625 ILCS 5/6-110(a) (West 2012). Section 6-103 of the Code (625 ILCS 5/6-103 (West 2012)) even provides a lengthy list of persons who "shall not" be licensed. Most importantly to the discussion here, the Secretary is not to issue a license to a person whose license to drive has been revoked:

> "unless and until such person has had a hearing pursuant to this Code and the appropriate administrative rules and the Secretary is satisfied, after a review or investigation of such person, that to grant the privilege of driving a motor vehicle on the highways will not endanger the public safety or welfare." 625 ILCS 5/6-208(b)(5) (West 2012).

I submit that we would not see our roads clogged with hordes of dangerous and/or ineligible licensed drivers even if such persons were not statutorily dissuaded from applying to the Secretary. Even more absurd is the fact that the legislature has not imposed a penalty for filing a premature application for a new license, short of the applicant perjuring himself by making a false application or affidavit. See 625 ILCS 5/6-302 (West 2012). In any event, application of the *Heritsch* definition would not create the havoc claimed by *Smith*, because the Secretary is not likely to rubber-stamp these alleged myriad applications. Neither the *Smith* court nor the majority here has perfected a proof that establishes that the clear language of the statute results in absurdity. See *People v. Moreland*, 2011 IL App (2d) 100699, ¶ 12

---

[3]The State's additional claim here that the charge will always remain a misdemeanor under *Heritsch* fails. If a subsequent conviction is for the same charge as the original revocation, then it is a felony.

(State's contention that failure to reverse trial court would "encourage defendants to manipulate the process for rescission hearings" was "true only if trial courts allow it.").

¶ 25    Additionally, *Smith*'s claim that a literal reading of revocation would lead to absurd results as applied to the implied consent law is a *non sequitur*. See *supra* ¶ 10 (quoting *Smith*, 2013 IL App (2d) 121164, ¶ 15). Whether a driver's license is revoked once or a dozen times, such a driver has the same incentive to comply (or not comply) with the implied consent law. Also, the claims regarding such a driver's theoretic and immediate applications for a new license again run into the actual reality that the Secretary of State does not have to grant such an application. The fears of *Smith* and the majority here are hyperbolic.

¶ 26    I believe that *Heritsch* was correctly decided and controls the outcome of this case. I say this based not upon the *ratio decidendi* of the *Heritsch* majority. I say this because *Smith*, upon which the majority here relies, incorrectly criticized *Heritsch*. The State in *Smith* claimed that the dissent in *Heritsch* was the correct position and that the holding in *Heritsch* should be abrogated.[4] However, the State failed to recognize that, in *Heritsch*, both it and the defendant agreed that the statute was clear and unambiguous on its face. See *Heritsch*, 2012 IL App (2d) 090719, ¶ 8. The State did not argue the alternative–that the statute was ambiguous and needed outside sources for interpretation.[5]

¶ 27    The majority in *Heritsch* decided the merits of the case based upon the parties' agreement that the statute was clear and unambiguous. Curiously, while the dissent in *Heritsch* noted the State's agreement with the defendant (see *Heritsch*, 2012 IL App (2d) 090719, ¶ 20 (Birkett, J., dissenting)), it concluded that the contrary result was required; in doing so, it disregarded the parties' agreement, treated the law as if it were ambiguous (despite the statutory definition and the plain and ordinary meaning of the term "revocation"), and proceeded in that manner to conclude differently from the majority. However, the dissent failed to consider, in light of its disagreement with the majority's analysis and conclusion, whether the law was ambiguous such that the rule of lenity should apply. See *People v. Carter*, 213 Ill. 2d 295, 302 (2004) ("Where a criminal statute is capable of two or more constructions, courts must adopt the construction that operates in favor of the accused."). Had the dissent considered the rule of lenity in its analysis, I submit that it should have come to the same result as the majority, as lenity should have been applied.

¶ 28    In *Smith*, Justice Birkett, who also authored the dissent in *Heritsch*, made no attempt to distinguish *Heritsch* even though, in *Smith*, the parties neither mentioned nor discussed the possible ambiguity of the penal statute and the proper application of the rule of lenity. The State argued that *Heritsch* should be abrogated, without either acknowledging its prior position that the statute was unambiguous or considering that the rule of lenity would apply

---

[4]The *Smith* majority rightly recognized that it lacked the power to grant the State's request. See *Smith*, 2013 IL App (2d) 121164, ¶ 7.

[5]However, the defendant in *Heritsch* did argue in the alternative and claimed that the rule of lenity would apply if the statute were ambiguous: "Alternatively, defendant argues that, if the term 'the revocation' as used in section 6-303(d-5) of the Code is ambiguous, the rule of lenity mandates a finding that the enhanced sentencing provision does not apply to him and that his conviction should be modified to misdemeanor DWLR and that he should be sentenced accordingly." *Heritsch*, 2012 IL App (2d) 090719, ¶ 19 (Birkett, J., dissenting).

based upon its claim that outside sources would be needed to establish the reasonableness of the *Heritsch* dissent's conclusion. *Stare decisis* means that precedent should normally be followed; "a question once deliberately examined and decided should be closed to further argument, ensuring that the law will develop in a 'principled, intelligent fashion,' immune from erratic changes."[6] *People v. Clemons*, 2012 IL 107821, ¶ 9 (quoting *People v. Colon*, 225 Ill. 2d 125, 146 (2007)). However, if a prior decision is distinguishable, it is not precedent, and *stare decisis* is not implicated. *People v. Trimarco*, 364 Ill. App. 3d 549, 556 (2006) (McLaren, J., dissenting). Thus, the arguments raised by the parties in *Smith* (and here) are inappropriate. Rather, what should have been addressed, if *Smith* and the majority here have decided that the arguments in *Heritsch* were either abandoned or procedurally defaulted, was, at minimum, the applicability of the rule of lenity to the ambiguity of a penal statute. As the majority acknowledges, defendant claims that the interpretation in *Heritsch* was reasonable. Assuming, *arguendo*, that defendant would concede that the majority's analysis here is reasonable, there would be more than one reasonable interpretation that can be given to a penal statute, and lenity would apply. Thus, the majority is only partially correct in claiming that the parties agree that lenity is not an issue, especially since defendant did not know of the *Smith* decision when he filed his reply brief.

¶ 29    In his dissent in *Heritsch*, Justice Birkett propagated the State's truncated analysis, and he repeated it in *Smith*, where the court determined that the clear language of section 6-303(d-5) of the Code would create absurd results. Therefore, *Smith* interpreted the law so as to suggest that the "ontological truism" of the statutory language should not be followed. *Smith*, 2013 IL App (2d) 121164, ¶ 11. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent; the best indication of that intent is the language used in the statute, which must be given its plain and ordinary meaning. *People v. McClure*, 218 Ill. 2d 375, 381-82 (2006). "When the statutory language is unambiguous, courts must construe the statute as written, without resorting to other aids of construction." *Moreland*, 2011 IL App (2d) 100699, ¶ 7 (citing *People v. Bywater*, 223 Ill. 2d 477, 481 (2006)). And that is what was done by the majority in *Heritsch* and *not* done by the dissent in *Heritsch*. Unfortunately, neither *Smith* nor the majority here seems to recognize that simple distinguishing fact, or that, even if the statute were ambiguous, the ambiguity should have resulted in lenity. The dissent in *Heritsch* and the analysis in *Smith* do little more than suggest that, because other statutes are more precisely written, the courts are to adopt the most punitive interpretation. That is a perversion of both the rule of lenity and the application of the plain and ordinary language contained in a statute, with a bias in favor of the State.

¶ 30    In *Heritsch*, we noted that the legislature could have used "inclusive language" such as " 'any revocation' " instead of " 'the revocation' " in drafting section 6-303(d-5) "but it apparently declined to do so." (Emphasis omitted.) *Heritsch*, 2012 IL App (2d) 090719, ¶¶ 10-11. To the extent that the plain meaning of the statute created "unsatisfactory or anomalous" results, "it is up to the legislature to correct that problem." *Id*. ¶ 11. The legislature has now done so, amending section 6-303 to add subsection (a-10), which provides:

---

[6]While *Smith* and the majority here point out that *stare decisis* does not make the opinion of one panel of an appellate court binding on another panel (*supra* ¶ 6), they fail to note our supreme court's preference for principled, intelligent development of the law.

"A person's driver's license, permit, or privilege to obtain a driver's license or permit may be subject to multiple revocations, multiple suspensions, or any combination of both simultaneously. No revocation or suspension shall serve to negate, invalidate, cancel, postpone, or in any way lessen the effect of any other revocation or suspension entered prior or subsequent to any other revocation or suspension." Pub. Act 98-418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013).

¶ 31    Thus, the legislature has now determined that a driver's license may be revoked or suspended even when it does not exist because it was already revoked. It has clearly shown that it wishes to adopt the term of art that the majority is prematurely applying here on the basis that the legislature was merely attempting to clarify its "preexisting intent" and repudiate the *Heritsch* interpretation. *Smith*, 2013 IL App (2d) 121164, ¶ 17. If the legislature originally intended something other than the plain and ordinary language that a reasonable person without a law license would understand, it could have enacted this definition of "revocation" instead of the definition that it did enact originally.

¶ 32    I submit that the majority is either unwilling or unable to see the forest for the trees. It has used multiple faulty rationales to conclude that the plain and ordinary meaning of "revocation" is a term of art. According to the majority, the interpretation in *Heritsch* is unreasonable. I submit that the interpretation in *Heritsch* is *the plain and ordinary meaning*, based upon what a reasonable person without extensive experience of the "practical oxymoron" would understand. The majority is not only applying what licensed attorneys and present jurists deem to be "plain and ordinary"; it is either unwilling or unable to accept that the amendment, which the majority claims does not depart from prior law, is a clarification only if one disregards the original statutory definition of "revocation" and disregards the ontological truism that a revocation is a singular termination. The fact that the legislature decided to alter the statutory definition of "revocation" from its original definition of a single act to a definition of multiple acts does not undermine the reasonableness of the holding in *Heritsch*; it confirms it.

¶ 33    As the supreme court pointed out in *People v. Petrenko*, 237 Ill. 2d 490, 510 (2010) (Freeman, J., specially concurring), the legislature may pass legislation that flies in the face of ontological truisms and natural science if it clearly intends to enact legislation that does not comport with common sense and the everyday experiences in life. It is not unconstitutional for the legislature to reshape concepts or redefine words even though such an undertaking is impractical or illogical. In *Petrenko*, the court overruled a portion of its decision in *People v. Palmer*, 218 Ill. 2d 148 (2006), and concluded that it was not impermissible, under either statutory or natural law, to sentence a defendant to serve a 10-year term in prison consecutive to a term of natural life; as the legislature had authorized such sentencing in the Unified Code of Corrections, courts are to enforce the statute "without regard to the practical impossibility of serving the sentences it yields." *Petrenko*, 237 Ill. 2d at 506-07. The legislature may, in its wisdom, legislate the absurd or the unnatural; if it does so in unambiguous language that, given its plain and ordinary meaning, demonstrates the legislature's intent, we must give effect to that intent. As of August 2013, such a legislative intent has been expressed, but it is applicable only to offenses committed *after* the effective date of the statutory amendment!

¶ 34    Defendant was charged before the unambiguous language in the amendment demonstrated the existence of such an unnatural legislative intent. The amendment shows that the

- 11 -

legislature knows how to specifically authorize multiple, concurrent revocations and suspensions of a person's driving privileges. In the absence of such an authorization before August 2013, defendant should be entitled to the protection of the logical interpretation of the clear expression of a natural legislative intent that existed when he was charged. See *Carter*, 213 Ill. 2d at 303-04. Thus, the trial court's judgment should be affirmed.