# Illinois Official Reports

## Appellate Court

---

### *People v. Blair*, 2015 IL App (4th) 130307

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHE BLAIR, a/k/a CHE'R BLAIR, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-13-0307, 4-13-0308 cons. |
| Filed | June 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, Nos. 12-CF-542, 12-CF-543; the Hon. Peter C. Cavanagh, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Alan D. Goldberg and Stephen L. Gentry, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>John Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Knecht and Turner concurred in the judgment and opinion.

## OPINION

¶ 1    In January 2013, defendant, Che Blair, a/k/a Che'r Blair, entered an open guilty plea to the Class 4 offense of driving while license suspended or revoked (625 ILCS 5/6-303(d-3) (West 2010)) in Sangamon County case No. 12-CF-542 (docketed case No. 4-13-0307). Following a March 2013 trial, a jury convicted defendant of a separate Class 3 charge of driving while license suspended or revoked (625 ILCS 5/6-303(d-4) (West 2010)) in Sangamon County case No. 12-CF-543 (docketed case No. 4-13-0308). The trial court sentenced defendant to concurrent prison terms of seven years in case No. 12-CF-543 and three years in case No. 12-CF-542.

¶ 2    In this consolidated appeal, defendant asserts that (1) his convictions should be reduced to Class A misdemeanors because the evidence was insufficient to support his Class 3 and Class 4 felony convictions where his driver's license had already been revoked at the time of the statutory summary suspension; (2) his 7-year sentence in case No. 12-CF-543 is excessive; and (3) he is entitled to an additional 249 days of sentencing credit in case No. 12-CF-543 for time served in an unrelated case.

¶ 3                              I. BACKGROUND

¶ 4    On June 26, 2012–while defendant was in custody on an unrelated charge–the State charged defendant by complaint with the Class 3 felony offense of driving while license suspended or revoked (625 ILCS 5/6-303(d-4) (West 2010)) in two separate cases, *i.e.*, case Nos. 12-CF-542 and 12-CF-543. The complaints alleged that defendant committed the offense of driving while license revoked on November 26, 2011, and March 17, 2012, respectively. The trial court ordered a $5,000 recognizance bond in both cases. On July 5, 2012, the State filed informations in both cases charging defendant with the same offenses charged in the complaints.

¶ 5    On January 8, 2013, defendant entered an open plea of guilty to driving while license suspended or revoked in Sangamon County case No. 12-CF-542. As part of the agreement, the State announced in court that it amended the information to reflect the charge was a Class 4 felony (625 ILCS 5/6-303(d-3) (West 2010)), although no formal amendment to the information is contained in the record before us. On January 31, 2013, defendant filed a motion to withdraw his guilty plea, alleging his plea was not knowing, intelligent, or voluntary.

¶ 6    On March 5, 2013, defendant's jury trial for the Class 3 felony offense of driving while license suspended or revoked in Sangamon County case No. 12-CF-543 commenced.

¶ 7    Jeffrey Coker, a Springfield police officer, testified that at approximately 3 a.m. on March 17, 2012, he was on patrol when he noticed a red Ford Crown Victoria driving without its headlights. Coker initiated a traffic stop and identified defendant as the driver of the vehicle. After determining that defendant's driver's license was revoked, he issued defendant citations for driving while license revoked and driving without headlights.

¶ 8        Christopher Bax, a court liaison with the Secretary of State's office, testified regarding defendant's driving abstract, which was admitted into evidence. Bax testified that defendant was issued a statutory summary suspension after he was stopped for driving under the influence of alcohol (DUI) on January 22, 2007, and that on March 17, 2012, defendant's driver's license was suspended, "at least in part," for the statutory summary suspension. On cross-examination, Bax acknowledged that respondent's statutory summary suspension was eligible "to be lifted" on October 26, 2007, but it remained in effect as of March 17, 2012. While Bax could not testify as to the reason the suspension was not lifted in this case, he agreed that suspensions may remain in effect until the required fees are paid. On re-cross-examination, Bax testified that a statutory summary suspension may also remain in effect if someone is convicted of driving on a suspended or revoked license.

¶ 9        Defendant testified on his own behalf and admitted that he was driving on March 17, 2012, at a time when he knew he did not have a valid driver's license.

¶ 10        At the close of evidence, defendant was found guilty of driving while license suspended or revoked.

¶ 11        On March 6, 2013, defendant filed a motion for acquittal or, in the alternative, a motion for a new trial in case No. 12-CF-543. On March 19, 2013, the trial court denied defendant's motion and proceeded to sentencing in both cases. The court sentenced defendant to concurrent prison terms of seven years in case No. 12-CF-543 and three years in case No. 12-CF-542. Defendant was awarded 16 days of sentence credit for the period from March 4, 2013, through March 19, 2013. On March 20, 2013, defendant filed a motion to reconsider his sentence in both cases, which the court denied on April 11, 2013. Also on April 11, 2013, the court denied defendant's motion to withdraw his guilty plea in case No. 12-CF-542. On May 2, 2013, defendant filed a motion to amend the sentencing judgment, asserting that he was entitled to a total of 266 days of credit for time served in custody for the period of June 19, 2012, through March 19, 2013. Defendant's motion to amend the sentencing judgment was filed after his April 18, 2013, notice of appeal and was not ruled on in the trial court.

¶ 12        This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14        In this consolidated appeal, defendant asserts that (1) his convictions should be reduced to Class A misdemeanors because the evidence was insufficient to support his Class 3 and Class 4 felony convictions where his driver's license had already been revoked at the time he was assessed a statutory summary suspension; (2) his 7-year sentence in case No. 12-CF-543 is excessive; and (3) he is entitled to an additional 249 days of sentencing credit in case No. 12-CF-543 for time spent in custody in an unrelated case.

¶ 15                            A. Sufficiency of the Evidence

¶ 16        Defendant first asserts that his Class 3 and Class 4 felony convictions for driving while license suspended or revoked should be reduced to Class A misdemeanors (see 625 ILCS 5/6-303(a) (West 2010)) and the causes remanded for resentencing. He argues that the State's evidence was insufficient to support his convictions for the enhanced Class 3 and Class 4 felonies of driving while license suspended or revoked (625 ILCS 5/6-303(d-3), (d-4) (West 2010)) because his driver's license was already revoked at the time he was assessed the

statutory summary suspension. According to defendant, the plain and ordinary meaning of the term "revocation" supports the conclusion that a license can be revoked only once–a conclusion he contends makes the statutory summary suspension assessed on his license a nullity that cannot support the sentence enhancements in this case.

¶ 17    Resolution of this issue requires us to determine whether the statute under which defendant was convicted allows for a statutory summary suspension to be assessed against a revoked driver's license. As the issue is one of statutory construction, our review is *de novo*. *People v. Heritsch*, 2012 IL App (2d) 090719, ¶ 7, 972 N.E.2d 305; *People v. Smith*, 2013 IL App (2d) 121164, ¶ 8, 999 N.E.2d 809 (noting that the issue on appeal, *i.e.*, whether driving privileges that have been revoked are subject to a later statutory summary suspension, is principally one of statutory construction). "When construing a statute, our goal is to determine and effectuate the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. [Citation.] This court will not depart from the statute's plain language by reading in exceptions, limitations, or conditions in conflict with the legislature's intent. [Citation.]" *In re Detention of Hardin*, 238 Ill. 2d 33, 40, 932 N.E.2d 1016, 1020 (2010).

¶ 18    The statutes under which defendant was convicted provide, in relevant part, as follows:

"Any person convicted of a fourth, fifth, sixth, seventh, eighth, or ninth violation of this Section is guilty of a Class 4 felony and must serve a minimum term of imprisonment of 180 days if the revocation or suspension for a violation of Section 11-401 or 11-501 of this Code, *** or a statutory summary suspension or revocation under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d-3) (West 2010).

"Any person convicted of a tenth, eleventh, twelfth, thirteenth, or fourteenth violation of this Section is guilty of a Class 3 felony, and is not eligible for probation or conditional discharge, if the revocation or suspension was for a violation of Section 11-401 or 11-501 of this Code, *** or a statutory summary suspension or revocation under Section 11-501.1 of this Code." 625 ILCS 5/6-303(d-4) (West 2010).

¶ 19    Initially, we note the State argues defendant cannot challenge the legal sufficiency of the evidence against him in case No. 12-CF-542 because he pleaded guilty. See *People v. Hunter*, 331 Ill. App. 3d 1017, 1025, 772 N.E.2d 380, 386-87 (2002) (a defendant may not question the legal sufficiency of the evidence against him following a guilty plea). Defendant counters that "both he and his attorney made it clear that [he] was only pleading guilty to driving, not to the sentencing enhancement." To support his contention, defendant points to discussions that occurred with the trial court on February 19, 2013. However, our review of the transcript from defendant's open guilty plea on January 8, 2013, reveals that defendant pleaded guilty with full knowledge he was pleading guilty to a Class 4 felony. Although initially charged as a Class 3 felony, the State amended the information prior to defendant's guilty plea. The February 19, 2013, discussions cited by defendant mainly concerned a proposed negotiated agreement in case No. 12-CF-543–a case in which defendant eventually proceeded to trial after the court ruled a conviction would subject defendant to Class 3 felony penalties. Based on the above, defendant clearly pleaded guilty to the Class 4 felony offense of driving while license suspended or revoked in case No. 12-CF-542.

¶ 20    Defendant next contends that if he did plead guilty to the enhanced offense, the sentence was void and therefore may be challenged at any time. According to defendant, the sentence was void "because his suspension or revocation was not issued pursuant to a DUI or statutory

summary suspension." Whether the sentence was authorized and valid depends on whether the statutory summary suspension that defendant challenges was effective.

¶ 21 Defendant relies heavily on *Heritsch*, a Second District case which is factually similar to this case. In *Heritsch*, the defendant was convicted of aggravated driving with a revoked or suspended license (625 ILCS 5/6-303(d-5) (West 2008)) and was sentenced as a Class X offender (see 730 ILCS 5/5-5-3(c)(8) (West 2008)). *Heritsch*, 2012 IL App (2d) 090719, ¶ 1, 972 N.E.2d 305. On appeal, the defendant argued that the State did not prove the aggravating factor, *i.e.*, that his driver's license had been revoked for DUI at the time of the 2008 offense of which he was convicted. *Id*. Rather, the defendant argued that "his license had been revoked continuously since 1991 and that 'the revocation' that made this so was based on a drug offense, not DUI." *Id*. ¶ 6, 972 N.E.2d 305. While noting that the defendant's driving abstract reflected his driver's license (the same license that was revoked in 1991) was also revoked in 2001 for DUI, the *Heritsch* majority opined that "a revoked driver's license remains revoked until a new license is issued." *Id*. ¶ 9, 972 N.E.2d 305. The majority concluded that because defendant's driver's license was revoked in 1991 and no other license was ever issued to him by the Secretary of State, the 2001 revocation of defendant's previously revoked license for DUI had no effect. *Id*. The majority acknowledged that its "holding appears to place defendant in a better position than he would have been had his license not been revoked until 2001, after he committed DUI." *Id*. ¶ 11, 972 N.E.2d 305. However, in the majority's opinion, the plain language of section 6-303(d-5), which referred to " '*the* revocation or suspension,' " implied "only *one* pertinent triggering event." (Emphases in original.) *Id*. ¶ 10, 972 N.E.2d 305 (quoting 625 ILCS 5/6-303(d-5) (West 2008)).

¶ 22 Justice Birkett dissented from the *Heritsch* majority. In his opinion, the majority's interpretation of "the revocation" language in section 6-303(d-5) of the Illinois Vehicle Code (Code) (625 ILCS 5/6-303(d-5) (West 2008)) was too narrow, ignored the clear intent of the legislature, and was at odds with numerous provisions of the Code. *Heritsch*, 2012 IL App (2d) 090719, ¶ 18, 972 N.E.2d 305 (Birkett, J., dissenting).

¶ 23 In *Smith*, 2013 IL App (2d) 121164, 999 N.E.2d 809, the Second District was faced with a similar issue as was presented in *Heritsch*. The *Smith* defendant was charged with driving while license suspended (625 ILCS 5/6-303(a) (West 2012)) during a time when a statutory summary suspension of his license was in effect (see 625 ILCS 5/11-501.1 (West 2012)), resulting in enhanced Class 2 felony penalties (625 ILCS 5/6-303(d-5) (West 2012)). *Smith*, 2013 IL App (2d) 121164, ¶¶ 1-2, 999 N.E.2d 809. Relying on *Heritsch*, the defendant filed a motion to dismiss the charge against him, asserting that the statutory summary suspension entered on his driver's license was a nullity because his license had already been revoked at the time the suspension was assessed. *Id*. ¶ 2, 999 N.E.2d 809. The trial court agreed, but rather than dismissing the charges, the court ordered the State to amend the charge to a misdemeanor. *Id*. On appeal, the State argued that *Heritsch* was wrongly decided. *Id*. ¶ 5, 999 N.E.2d 809. The *Smith* court–in a unanimous opinion authored by Justice Birkett, the dissenter in *Heritsch*–agreed with the State. *Id*. ¶ 6, 999 N.E.2d 809.

¶ 24 The *Smith* court observed that the question before it was one of statutory interpretation, citing the well-settled principle that "[w]hen the language of a statute is clear and unambiguous, courts may not depart from the language by incorporating exceptions, limitations, or conditions that the General Assembly did not express." *Id*. ¶ 9, 999 N.E.2d 809. However, the court noted that " '[a] literal interpretation is not controlling where the spirit and

intent of the General Assembly in enacting a statute are clearly expressed, its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statute will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result [citation].' " *Id.* (quoting *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263, 266-67, 818 N.E.2d 401, 404-05 (2004)).

¶ 25    Relying on these principles, the *Smith* court noted as follows:

"If the statutory definition of 'revocation'–the '*termination* \*\*\* of a person's license or privilege to operate a motor vehicle' (emphasis added) (625 ILCS 5/1-176 (West 2012))–is given its most literal meaning, the argument that revocation is a singular occurrence might appear to be an ontological truism: after one's license or privilege to operate a vehicle is terminated, it no longer exists and therefore cannot again be terminated. By the same logic, a revoked license could not be suspended either. It is reasonably clear from examination of the Code as a whole, however, that the General Assembly did not intend for the term 'revocation' to be read so literally. To the contrary, 'revocation' appears to be used, in part, as a term of art that refers to a formal act of the Secretary and its attendant legal consequences. Thus, section 6-205(a) places no express limitation on the number of times the Secretary may revoke a driver's license. Nor does section 6-205(a) expressly limit revocation to cases where no prior revocation is in effect." *Id.* ¶ 11, 999 N.E.2d 809.

¶ 26    The *Smith* court found support for its conclusion that a revocation of a driver's license does not preclude future revocations or suspensions of the same license in other sections of the Code, noting terms and phrases which would be rendered superfluous or meaningless if revocation was considered a singular occurrence (see 625 ILCS 5/6-208(b)(1.5), 6-205(c)(2) (West 2008)). *Smith*, 2013 IL App (2d) 121164, ¶ 12, 999 N.E.2d 809. Further, the court opined that a literal interpretation of the term "revocation" would lead to absurd results. For example, the court noted that a driver whose license had been revoked would have no incentive to comply with the implied consent law, and thus, could without consequence refuse chemical testing if arrested for DUI and "could theoretically apply for a new driver's license during the period when an otherwise similarly situated *licensed* driver would be prohibited from driving." (Emphasis in original.) *Id.* ¶ 15, 999 N.E.2d 809. Accordingly, the court held, "when a motorist's driving privileges are subject to statutory summary suspension under the implied consent law, the suspension is valid notwithstanding any prior revocation or suspension of the motorist's driving privileges. Such a suspension may therefore be the basis for an enhanced penalty for violating section 6-303(a) while the suspension is in effect." *Id.* ¶ 6, 999 N.E.2d 809.

¶ 27    In *People v. Webber*, 2014 IL App (2d) 130101, 11 N.E.3d 890, the Second District was presented with another opportunity to address the issue raised in *Heritsch* and *Smith*. The defendant in *Webber* was charged with the Class 4 felony offense of driving while license revoked due to a DUI conviction (625 ILCS 5/6-303(a), (d-2) (West 2012)). *Webber*, 2014 IL App (2d) 130101, ¶ 3, 11 N.E.3d 890. Like the defendant in *Smith*, Webber–also relying on *Heritsch*–filed a motion to dismiss the charge against him, asserting that at the time of his DUI, his driver's license had already been revoked, and thus, the revocation for DUI that appeared on his driving record "was of no effect and therefore could not be the basis for enhancing the

- 6 -

[driving while license revoked] to a felony." *Id.* ¶ 1, 11 N.E.3d 890. The trial court agreed and dismissed the charge. *Id.* On appeal, the State again argued–as it did in *Smith*–that *Heritsch* was wrongly decided. *Id.* The *Webber* majority agreed with the analysis in *Smith* and declined to follow *Heritsch*. (While acknowledging the *Smith* and *Webber* courts disagreed with *Heritsch*, defendant points out that the *Webber* opinion was not unanimous. We recognize the *Webber* opinion was not unanimous, but we note that the dissenting justice in that case was on the majority panel of *Heritsch*.)

¶ 28 The *Smith* and *Webber* courts noted that during the pendency of the respective appeals before them, the General Assembly amended section 6-303 of the Code, adding subsection (a-10), which provides as follows:

"A person's driver's license, permit, or privilege to obtain a driver's license or permit may be subject to multiple revocations, multiple suspensions, or any combination of both simultaneously. No revocation or suspension shall serve to negate, invalidate, cancel, postpone, or in any way lessen the effect of any other revocation or suspension entered prior or subsequent to any other revocation or suspension." Pub. Act 98-418, § 5 (eff. Aug. 16, 2013); Pub. Act 98-573, § 5 (eff. Aug. 27, 2013).

See *Webber*, 2014 IL App (2d) 130101, ¶ 12, 11 N.E.3d 890; *Smith*, 2013 IL App (2d) 121164, ¶ 17, 999 N.E.2d 809.

¶ 29 Both courts determined that the General Assembly crafted the amendment to clarify its intent regarding the former version of the statute and to repudiate the interpretation of the statute adopted by the *Heritsch* majority. *Id.*; *Webber*, 2014 IL App (2d) 130101, ¶ 13, 11 N.E.3d 890. " 'An amendment, which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute.' " *In re Detention of Lieberman*, 201 Ill. 2d 300, 323, 776 N.E.2d 218, 231 (2002) (quoting 1A Norman J. Singer, Sutherland on Statutory Construction § 22.31, at 379-80 (6th ed. 2000)).

¶ 30 In light of the General Assembly's declaration of the meaning of the former act, we agree with the *Smith* and *Webber* courts' interpretation of section 6-303 of the Code as the law existed at the time of the subject offenses, and we specifically find the prior revocation of defendant's driving privileges did not render his subsequent statutory summary suspension a nullity for purposes of the enhanced driving while license suspended or revoked charges. Accordingly, we conclude that the evidence was sufficient to support defendant's Class 3 and Class 4 felony convictions where his driving abstract reveals that his driver's license was under a statutory summary suspension at the time of the November 26, 2011, and March 17, 2012, offenses.

¶ 31                                B. Excessive Sentence

¶ 32 Defendant next asserts that his seven-year sentence in case No. 12-CF-543 is excessive.

¶ 33 In imposing sentence, the Illinois Constitution requires the trial court to balance the defendant's potential for rehabilitation with the seriousness of the offense. Ill. Const. 1970, art. I, § 11. "This constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26, 21 N.E.3d 810.

"A reasoned sentence must be based on the particular circumstances of each case." *Id*. We afford great deference to the trial court's sentencing judgment "[b]ecause of the trial court's opportunity to assess a defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id*. We review a trial court's sentencing decision for an abuse of discretion. *Id*. "An abuse of discretion may be found even if the sentence is within the statutory limitations if the sentence is greatly at variance with the purpose and spirit of the law." *People v. Kenton*, 377 Ill. App. 3d 239, 245, 879 N.E.2d 402, 407 (2007).

¶ 34     According to defendant, the trial court's decision to sentence him to seven years in prison in case No. 12-CF-543 cannot be reconciled with the factors a trial court must consider in sentencing a defendant. Citing *People v. Calhoun*, 404 Ill. App. 3d 362, 389, 935 N.E.2d 663, 686 (2010), defendant notes that the seriousness of the crime is the single most important factor in fashioning an appropriate sentence. Defendant concludes–without argument or citation to authority–that his offense was not of such a serious nature as to justify a seven-year prison sentence. Defendant then cites a number of mitigating factors which, in his opinion, should have been given more weight by the court, including the following: (1) he did not intend to threaten or cause harm to anyone; (2) he drove only because his two companions were too intoxicated to drive; and (3) his incarceration creates an excessive hardship on his two small children. See 730 ILCS 5/5-5-3.1(a) (West 2012).

¶ 35     A Class 3 felony normally carries a sentencing range of 2 to 5 years; however, due to defendant's criminal history, he was eligible for an extended-term sentence ranging from 5 to 10 years. 625 ILCS 5/6-303(d-4) (West 2010); 730 ILCS 5/5-8-2 (West 2012); 730 ILCS 5/5-5-3.2(b) (West 2012). The presentence investigation report reveals that defendant's criminal history dates back to 2001 and includes 17 Class A misdemeanors (10 of which are for driving on a suspended or revoked license), 1 Class C misdemeanor, and 3 felonies (including the Class 4 felony in case No. 12-CF-542). The State requested an eight-year prison sentence. Defense counsel requested a sentence in the two- to three-year range, noting that the overwhelming majority of defendant's criminal history consisted of misdemeanor offenses, that defendant drove only to protect himself and his passengers, and because a lengthy sentence would impose an excessive hardship on his young children. Defendant made a statement in allocution, promising to "work diligently at being rid of the behavior that landed me here."

¶ 36     Prior to imposing sentence, the trial court indicated it had considered the arguments of the parties, the testimony, defendant's driving abstract, defendant's statement in allocution, as well as "the factors of aggravation and mitigation that apply in this particular case." The court noted that defendant had an extensive criminal record and had been given many breaks in his other cases. The court also noted defendant had been unsuccessful on probation in the past and had been previously sentenced to six years in prison for unlawful possession of a controlled substance and unlawful possession of a firearm by a felon. The court then imposed a seven-year prison sentence.

¶ 37     Based on the above, we find that the trial court properly considered the relevant sentencing factors in this case. Therefore, the court did not abuse its discretion in sentencing defendant to seven years in prison in case No. 12-CF-543.

¶ 38     Defendant also asserts the trial court erroneously considered his prior convictions for driving with a revoked or suspended license in sentencing him at the upper end of the sentencing range because those same convictions served as the basis to elevate the instant

offense in case No. 12-CF-543 to a Class 3 felony. However, as pointed out by the State, defendant did not raise this claim in his motion to reconsider the sentence, and thus, he has forfeited it. *People v. Harris*, 366 Ill. App. 3d 1161, 1164, 853 N.E.2d 912, 915 (2006). Even if the issue was not so forfeited, our review of the record does not support defendant's contention. In sentencing defendant, the court stated, "with a criminal record such as this, the Court has to sentence you appropriately," but it did not go on to specifically identify any prior offenses. Given that defendant's criminal record included multiple offenses unrelated to driving, his argument is without merit.

¶ 39                                    C. Sentencing Credit

¶ 40        Last, defendant contends that he is entitled to an additional 249 days of sentencing credit in case No. 12-CF-543 for the time spent in custody following his arrest in an unrelated case. The State disagrees, asserting that the trial court ordered a recognizance bond in the instant case on June 26, 2012, and that the bond was neither surrendered nor revoked until March 5, 2013. Although the State stipulates that defendant was taken into custody on June 19, 2012, for an unrelated offense and remained in custody through sentencing in the instant case, it asserts that defendant is only entitled to the 16 days of credit he was awarded by the trial court. In the alternative, defendant asserts that his trial counsel was ineffective for failing to move to withdraw his bond in the instant case.

¶ 41        Section 5-4.5-100(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-100(b) (West 2012)) provides that an offender shall receive sentence credit for the number of days spent in custody as a result of the offense for which the sentence was imposed. The "statutory right to receive credit for time served is mandatory and forfeiture rules do not apply." *People v. Dieu*, 298 Ill. App. 3d 245, 249, 698 N.E.2d 663, 666 (1998).

¶ 42        Here, defendant was already in custody on an unrelated matter on June 26, 2012, the date he was charged with the instant offense. On June 26, 2012, the trial court ordered a $5,000 recognizance bond on each of the driving while license suspended charges and informed defendant, "[y]ou will not be held in custody on these cases." The bond was eventually revoked at the State's request on March 5, 2013, following defendant's conviction.

¶ 43                              1. *Effect of the Recognizance Bond*

¶ 44        In *People v. Arnhold*, 115 Ill. 2d 379, 383, 504 N.E.2d 100, 101 (1987), the Illinois Supreme Court concluded that "a defendant who is out on bond on one charge, and who is subsequently rearrested and returned to custody on another charge, is not returned to custody on the first charge until his bond is withdrawn or revoked." Accordingly, the court held that the defendant "was not simultaneously in custody on more than one charge until he withdrew his bond on the initial charges." *Id*. at 384, 504 N.E.2d at 102. Although the facts of this case differ from *Arnhold* in that defendant was already in custody for an unrelated offense at the time he was charged with the instant offense and the trial court issued the $5,000 recognizance bond, *Arnhold* is controlling. Applying the principles established in *Arnhold*, we find that defendant was not in legal custody for the offense at issue here until his bond was revoked on March 5, 2013. Thus, defendant is not entitled to an additional 249 days of sentence credit pursuant to section 5-4.5-100(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-100(b) (West 2012)).

¶ 45                                              2. *Ineffective Assistance of Counsel Claim*

¶ 46        Defendant argues in the alternative that his trial counsel was ineffective for failing to promptly move to withdraw his bond so that he would receive simultaneous sentence credit. Defendant cites *People v. DuPree*, 353 Ill. App. 3d 1037, 820 N.E.2d 560 (2004), and *People v. Centeno*, 394 Ill. App. 3d 710, 916 N.E.2d 70 (2009), for the proposition that "there is no reason for counsel failing to withdraw bond in the instant case." In *DuPree*, the Fifth District concluded that counsel should have moved to withdraw the bond posted in order to allow the defendant to earn simultaneous credit. *DuPree*, 353 Ill. App. 3d at 1049, 820 N.E.2d at 570. Likewise, in *Centeno*, the Third District majority noted that "[h]ad [the defendant] received effective assistance, counsel would have moved to surrender the defendant in exoneration of his bond." *Centeno*, 394 Ill. App. 3d at 714, 916 N.E.2d at 73. Justice Schmidt dissented, noting that defendant's ineffective assistance of counsel claim was not supported by the record where the record was silent regarding defendant's or counsel's positions on whether to seek exoneration of the bond, and he opined that defendant's claim would be more appropriately addressed in a postconviction petition, where a sufficient record could be developed. *Id*. at 715, 916 N.E.2d at 74 (Schmidt, J., dissenting).

¶ 47        Although we can identify no apparent reason in the record for trial counsel's failure to withdraw defendant's bond in the instant case, the lack of such evidence does not foreclose the possibility that counsel had a legitimate reason for not withdrawing defendant's bond. Thus, we decline to rule on defendant's ineffective assistance of counsel claim as it would be better brought under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-7 (West 2012)) where an adequate record can be developed.

¶ 48                                              III. CONCLUSION

¶ 49        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2012).

¶ 50        Affirmed.