NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200118-U

NO. 4-20-0118

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 27, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| CYNTHIA L. FUCHS, | ) | No. 19CF710 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not consider improper aggravating sentencing factors or fail to consider mitigating evidence.

¶ 2    On November 13, 2019, defendant, Cynthia L. Fuchs, pleaded guilty to theft (720 ILCS 5/16-1(a)(1)(A) (West 2016)). The trial court sentenced defendant to seven years' imprisonment. Defendant appeals, arguing the court erred in its sentence because it relied on improper sentencing factors and failed to consider certain mitigating evidence. We affirm.

¶ 3                           I. BACKGROUND

¶ 4    On July 16, 2019, the State charged defendant with theft (720 ILCS 5/16-1(a)(1)(A) (West 2016)), alleging that, between October 1, 2010, and October 6, 2017, defendant stole between $100,000 and $500,000 in United States currency and Microsoft rebates from her

employer, the Federation of Independent Illinois Colleges and Universities (Federation). The offense was charged as a Class 1 felony. In November 2019, defendant entered an open guilty plea, which the trial court accepted.

¶ 5    On December 20, 2019, the trial court conducted defendant's sentencing hearing. During the hearing, the State called Detective Shawn Daubs of the Springfield Police Department. Detective Daubs testified that, in 2018, he had been assigned to investigate defendant's conduct and concluded that between 2010 and 2017, defendant "had continuously and repeatedly" stolen money from the Federation, including from a Federation account containing money from a federal grant called Teaching with Primary Sources (TPS). Detective Daubs further testified that defendant was an administrator on the Foundation's TPS account and used her position to write numerous checks from that account to herself and to family members. According to Detective Daubs, the value of the checks defendant wrote to herself from the TPS account totaled $148,295.70. Defendant also wrote checks to her sister which totaled $97,545.77 and wrote checks to other family members which totaled $5274.50. In addition, Detective Daubs testified that defendant charged personal expenses, including repairs to her car and vacations for herself and her family members, to a credit card in the Federation's name and paid the credit card expenses from the TPS account. Defendant would also charge the Federation's credit card for business-related expenses, claim that she had paid the expenses out of pocket, and receive reimbursement from the Federation. Finally, Detective Daubs testified that defendant improperly deposited into the TPS account rebates that the Federation received from its use of certain computer programs "in an apparent attempt to replace some of the money that she had been stealing." In total, according to Detective Daubs, defendant had stolen more than $375,000 from the Federation. Regarding defendant's financial circumstances at the time of the hearing, Detective Daubs testified that defendant

received Social Security benefits and did not have any other assets. Detective Daubs continued that defendant had emptied her retirement account, her home was in foreclosure, and before she was arrested, she had been living with a family member.

¶ 6        The State also called David Tretter, the president of the Federation. Tretter testified that defendant began working for the Federation in 1991 and worked her way up to become vice president for administrative services, earning an annual salary of $102,000. Tretter also testified that, before defendant was terminated in 2017, she had been a "trusted employee" who had access to all the Federation's bank accounts and whose responsibilities included paying the Federation's bills and writing checks on its behalf. According to Tretter, defendant's actions had "a profound effect" on the Federation and "it took a considerable amount of time and effort on the staff's part to put the puzzle back together and get the organization back up and running." Tretter further testified that, as part of defendant's employment, she had participated in a retirement savings program and that, at one point during her employment, she had approximately $350,000 in her retirement account. However, according to Tretter, defendant had liquidated that account. Tretter described the withdrawals from the retirement account as follows: "It was over a period of years, aggressively the last—'13, '14, '15, '16, '17 would be the bulk of it."

¶ 7        In mitigation, defendant called Laurie Fuchs, defendant's daughter-in-law. Laurie testified that defendant had four sons and that two of her sons, Eric and Adam, were "the source of [defendant']s financial issues." Laurie explained that Eric and Adam were addicted to controlled substances and constantly demanded money from defendant and threatened her. According to Laurie, on one occasion in 2019, Adam struck defendant and threatened to throw defendant off her apartment balcony. Laurie testified that defendant complied with Eric's and Adam's demands for money out of "a combination of love and fear," giving the two over $100,000 in the four years

preceding the sentencing hearing alone. Defendant initially hid her financial issues from Laurie, but Laurie eventually learned defendant had cashed out her retirement savings and she was deeply in debt.

¶ 8　　　　Defendant also presented several letters in mitigation which were consistent with Laurie's testimony, indicating that, since 2009, Eric and Adam had pressured defendant into giving them money to support their drug habits. For example, defendant's sister wrote the following:

> "Those boys have taken everything from [defendant]. They took her home, her car; they threaten her every day for money for drugs. They have been in prison, have not worked in years, they have also been physically abusive to her. *** They have threaten[ed] to throw her out of a 12th floor window, one of them beat a cat to death in front of her, knocked her down and broke her glasses. They scare the whole family."

¶ 9　　　　Defendant made a statement in allocution. According to defendant, "[e]ven though [she] worked and made a good salary, [she] couldn't keep up with the money [Eric and Adam] needed to support *** [their] out-of-control drug habits and all that goes along with that." She continued, "[t]here was never enough money to support their habits. That's when things started spiraling out of control and I started taking money from the Federation." Defendant concluded that she was "so sorry and ashamed for the things that [she] did to enable [her sons'] drug addiction."

¶ 10　　　　Following the presentation of evidence, the State and defense counsel presented argument. The State requested defendant be sentenced to 10 years in prison, and defense counsel requested probation. Ultimately, the trial court sentenced defendant to seven years in prison. In issuing its sentence, the court stated, in relevant part, as follows:

> "I have considered the factual basis, presentence investigation report, and the

addendum; the history, character, and attitude of the defendant; also the letters of support that were submitted along with the other exhibits that have been submitted; the evidence presented, the argument of each of the attorneys, and of course, the statement of allocution made by the defendant. I've also considered the statutory factors in aggravation and mitigation and having due regard for the circumstances of this particular offense.

* * *

Now, I do note that [defendant's] sons[,] Eric and Adam[,] through her testimony and through [defendant's] witness indicated that there is a drug problem. According to the amount of money that she gave them—I don't know the exact amount; that was never really made clear—but it would have to be an incredible drug problem, monumental drug problem to justify the amount of money that she's claiming she gave to them. At best, she facilitated or enabled their drug habit and kept it hidden.

***

I note that [defendant] had no alcohol or drug problem, at least none that I've been made aware of. And this step took place over conservatively a seven-year period of time. And she worked at the Federation for many years, over 25 years. That goes back to what I first said. And I underlined. Trust. That's building up trust. During that period of time, she's earning an income in excess of $100,000. Not to mention whatever other benefits and pension, retirement.

Many, many people would be incredibly happy with that type of income. Now, though, afterwards, she claims she only has income of approximately $2,000

in Social Security, only approximately $100 in checking and savings accounts, and some $75,000 in debt. She cashed in her retirement. Over $300,000. I'm not 100 percent sure as to when that happened, but it's my belief from the testimony and evidence presented it was done towards the end of her tenure at the Federation. In other words, it wasn't done over this period of time of 10 years. It was done towards the end. She consciously made the decision to use the Federation's credit cards for her own personal use over and over and over.

As I previously mentioned, she cashed in her retirement over $300,000. Did that all go to Eric and Adam? Where did that go? It's gone. Could be insinuated that it was taken out to avoid having to pay any restitution to the Federation. Because I have the feeling—and I just heard from Mr. Tretter, but just his testimony, I have this feeling that if she had gone to them at any time, maybe when she liquidated her pension and retirement, and come clean with them, I don't know if we'd be here. I really don't know if we'd be here today.

Maybe Mr. Tretter and the Federation would have wanted to keep it in house for embarrassment purposes, but I really don't think so. From the testimony and listening to him, I really think he would have accepted that. He would implore the rest of the Federation to accept it. Of course, she would have been terminated. But I doubt we'd be here today. I really do. She stole the funds for personal use over and over and over. ***

[Defendant's counsel] indicated that no message needs to be sent because it's universally known stealing is wrong. Apparently [defendant] did not known that. She did so because of a combination of love and fear of her two sons, but it's

been clear to me that other relatives benefitted from these steps. I think she benefitted from these steps. To suggest that all the stolen funds were, as I stated earlier, were used on Eric and Adam is just impossible to believe.

***

I do believe a sentence to the Department of Corrections is necessary to deter similar offenses."

¶ 11 After the sentencing hearing, defendant filed a motion to reconsider and reduce sentence. In her motion, defendant claimed the trial court "overemphasized and gave undue weight to the factors in aggravation" and "did not give enough weight to the factors in mitigation." Following a hearing, the court denied defendant's motion.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 On appeal, defendant argues the trial court erred in sentencing her to seven years' imprisonment because the court relied on improper sentencing factors and failed to consider certain mitigating evidence.

¶ 15 Defendant first argues the trial court erred in its sentence because it relied on improper sentencing factors. Specifically, defendant claims the court's suggestion that she liquidated her retirement savings to avoid paying restitution to the Federation and its conjecture that she could have avoided criminal charges if she had repaid the Federation were not supported by the evidence. Defendant acknowledges she forfeited review of this claim because she failed to make a contemporaneous objection and failed to raise the issue in her motion to reconsider and reduce sentence. See *People v. Pina*, 2019 IL App (4th) 170614, ¶ 29, 143 N.E.3d 794. Nonetheless, defendant requests we review her claim for plain error.

¶ 16　　　　The plain error doctrine allows review of forfeited claims in the following circumstances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness or the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.*

Defendant's claim may be subject to review under the second prong of the plain error doctrine because "when a trial court considers erroneous aggravating factors in determining the appropriate sentence of imprisonment, the defendant's fundamental right to liberty is unjustly affected, which is seen as a serious error." (Internal quotation marks omitted.) *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 7, 973 N.E.2d 459. "For plain error to exist, however, we must first decide that an error actually occurred." *Id.*

¶ 17　　　　"A reasoned sentence must be based on the particular circumstances of each case." (Internal quotation marks omitted.) *People v. Blair*, 2015 IL App (4th) 130307, ¶ 33, 44 N.E.3d 1073. The Illinois Constitution mandates that, in imposing a sentence, the trial court must balance the seriousness of the offense and the defendant's potential for rehabilitation. Ill. Const. 1970, art. I, § 11. As we have previously explained, "[t]his constitutional mandate calls for balancing the retributive and rehabilitative purposes of punishment, and the process requires careful consideration of all factors in aggravation and mitigation." (Internal quotation marks omitted.) *Blair*, 2015 IL App (4th) 130307, ¶ 33. Additionally, the Unified Code of Corrections (730 ILCS 5/5-5-3.1 to 5-5-3.2 (West 2016)) sets forth mitigating and aggravating factors the court must

consider prior to issuing its sentence. Generally, "a trial judge is given great discretion to determine an appropriate sentence within the limits set by the legislature." *People v. Evans*, 2018 IL App (4th) 160686, ¶ 43, 127 N.E.3d 695. However, while the sentencing court may rely on reasonable inferences from the evidence in entering the defendant's sentence, it may not base its sentencing decision on speculation. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 92, 35 N.E.3d 1095; *People v. Zapata*, 347 Ill. App. 3d 956, 964, 808 N.E.2d 1064, 1071 (2004)).

¶ 18        "Whether a trial court considered an improper factor when sentencing a defendant is a question of law, which we review *de novo*." *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 72, 66 N.E.3d 601. On review, we presume that in entering the defendant's sentence, the trial court considered only competent evidence. *People v. Ayala*, 386 Ill. App. 3d 912, 920, 899 N.E.2d 513, 520 (2008). "The defendant bears the burden to affirmatively establish that [his] sentence was based on an improper factor." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103, 126 N.E.3d 703. If it is shown that the sentencing court relied on an improper factor in aggravation, remand is required unless "it appears from the record that the weight placed upon the improper factor was so insignificant that it did not lead to a greater sentence." *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 18.

¶ 19        As stated, defendant claims the trial court erred in its sentence because its suggestion that she liquidated her retirement savings to avoid paying restitution to the Federation and its conjecture that she could have avoided criminal charges if she had repaid the Federation were not supported by the evidence. In reply, the State argues the court's comments were mere "musings" and there was "no indication that the court considered this speculation as either an aggravating factor or as a factor in mitigation." We agree with the State. Even assuming, *arguendo*, that the court's statements referenced by defendant were improperly speculative, it cannot be said that a "clear or obvious error" occurred because it is only arguable that the court actually gave

weight to these factors in shaping defendant's sentence. See *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 17, 138 N.E.3d 31 ("The plain error doctrine is not a backdrop to catch merely arguable issues that could have been raised in the trial court. The error had to be manifest or patent."). Initially, we note that defendant's 7-year prison sentence was much closer to the minimum term of 4 years than to the maximum term of 15 years. See 730 ILCS 5/5-4.5-30(a) (West 2016) (stating the potential term of imprisonment for a Class 1 felony is between 4 and 15 years). Moreover, the court's suggestion that defendant liquidated her retirement account to avoid paying restitution was brief and seems only to have served as a segue for the court's more extensive discussion whether defendant could have avoided prosecution by paying back the Federation before her misconduct was uncovered. However, although the court's comments about what might have happened if defendant had reimbursed the Federation were lengthy, nothing in the court's statement indicates that it actually considered the matter in aggravation. Instead, the record demonstrates that, in entering defendant's sentence, the court relied primarily upon defendant's breach of her position of trust as a long-time employee of the Federation and upon the need for deterrence, factors which the court referenced multiple times throughout its statement. The court's statement identified by defendant seems to only have been a neutral observation, and we cannot agree that it affected defendant's sentence.

¶ 20 Because it is not "clear or obvious" that the trial court relied on the allegedly improper matters in aggravation, it cannot be said that a plain error occurred. Therefore, plaintiff's forfeiture is not excused under the plain error doctrine.

¶ 21 Defendant also argues on appeal that the trial court failed to consider certain mitigating evidence. As stated above, the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2016)) requires that the trial court consider several mitigating factors prior to entering a

defendant's sentence. Although the court is required to consider the statutory factors in sentencing a defendant, the weight to be given to each factor is left to the discretion of the trial court. *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. Additionally, "[t]he trial court is not obliged to recite or assign a value to each factor presented at the sentencing hearing." (Internal quotation marks omitted.) *People v. Shaw*, 351 Ill. App. 3d 1087, 1093, 815 N.E.2d 469, 474 (2004). Rather, "if mitigating evidence is presented at the sentencing hearing, this court presumes that the trial court took that evidence into consideration, absent some contrary evidence." *Id.*

¶ 22 "A sentence imposed within the statutory range provided by the legislature is presumed to be proper." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. Such a sentence "will not be deemed excessive and an abuse of the court's discretion unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Pina*, 2019 IL App (4th) 170614, ¶ 20.

¶ 23 Here, defendant was convicted of a Class 1 felony (720 ILCS 5/16-1(b)(6) (West 2016)) which, again, carries a potential term of imprisonment of between 4 and 15 years. 730 ILCS 5/5-4.5-30 (West 2016). Because defendant's seven-year prison sentence was within the authorized statutory range, we presume that it was proper. Nonetheless, defendant argues the presumption does not apply here because the trial court failed to consider a mandatory statutory factor. Specifically, defendant contends the court failed to consider whether, at the time defendant committed the offense, she was or had been the victim of domestic violence which "tended to excuse or justify [her] criminal conduct," as required under section 5-5-3.1(a)(15) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a)(15) (West 2016)). The record clearly refutes defendant's claim. Prior to imposing defendant's sentence, the court stated that it had considered, among other things, the letters defendant submitted in mitigation, the evidence presented, and the

argument of defense counsel, all of which referenced Eric's and Adam's drug habits and how the two pressured defendant into giving them money to support their habits. The court also stated it had considered the relevant mitigating factors. More importantly, during its oral comments, the court referenced Eric's and Adam's drug use several times. At one point, the court explicitly stated that defendant had acted "because of a combination of love and fear of her two sons," indicating that the court had considered defendant's evidence that she only stole money as a result of Eric's and Adam's actions. However, the court also noted that, contrary to defendant's claim, both defendant and her other relatives had benefitted from her conduct. This statement was apparently a reference to the fact that defendant had, for example, given her sister almost $100,000 of the money that she stole from the Federation, had used Federation money for such luxuries as cruise vacations and a vacation to Puerto Rico with her granddaughter, and had used Federation money for personal expenses. Thus, taking the court's statement as a whole, it is clear the court did not fail to consider that defendant had suffered domestic violence at the hands of Eric and Adam. The court only determined that the domestic violence did not excuse or justify defendant's conduct in light of the evidence showing that defendant had used money she stole from the Federation for personal uses and not only to give to her sons.

¶ 24                                III. CONCLUSION

¶ 25        For the reasons stated, we affirm the trial court's judgment.

¶ 26        Affirmed.