NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230630-U

NO. 4-23-0630

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Ogle County |
| LEONARD R. SMITH, | ) | No. 18CF106 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John B. Roe, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, holding the trial court did not abuse its discretion in imposing defendant's 18-year prison sentence.

¶ 2    Defendant, Leonard R. Smith, pleaded guilty to attempt (first degree murder) (720 ILCS 5/9-1(a)(1), 8-4(a) (West 2018)), and the trial court sentenced him to 18 years' imprisonment. On appeal, defendant contends the court abused its discretion in imposing the sentence. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    In June 2018, defendant was charged by information with attempt (first degree murder) (720 ILCS 5/9-1(a)(1), 8-4(a) (West 2018)), aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2018)), and two counts of aggravated battery (720 ILCS 5/12-3.05(a)(1), (f)(1) (West 2018)). In April 2019, the State filed supplemental information adding a charge of armed violence (720 ILCS 5/33A-2(a) (West 2018)).

¶ 5        In January 2022, defendant entered an open guilty plea to attempt (first degree murder) in exchange for the dismissal of the remaining charges. In response to the trial court's questioning, defendant asserted he understood the parties had no agreement as to a potential sentence. He also confirmed he understood the sentencing range was 6 to 30 years' imprisonment for the offense of attempt (first degree murder).

¶ 6        In its factual basis for defendant's guilty plea, the State indicated the evidence would show defendant and a woman named Beth Edge went out to celebrate their birthdays. Later in the evening, they were driving in her vehicle and began arguing. Edge got out of the vehicle and defendant chased her on foot, tackled her, and repeatedly stabbed her with a knife in the face, neck, chest, and hand. Edge suffered severe blood loss and was transported to SwedishAmerican Hospital, and she was later transferred to the University of Wisconsin-Madison for further treatment. Following the State's recitation of the factual basis, the trial court accepted defendant's guilty plea to the offense of attempt (first degree murder) and dismissed the remaining counts in accordance with the parties' agreement.

¶ 7        At the sentencing hearing, Chief Deputy Danielle Hardesty with the Ogle County Sheriff's Office testified she responded to a call at 1:47 a.m. on June 1, 2018. When she arrived, Hardesty observed a Jeep vehicle with a door open. A man later identified as defendant was laying on the ground, and a woman later identified as Edge was located a short distance away from him. Edge was lying on her back in a bra and leggings, her breathing was "labored," and she was "caked in blood." Hardesty observed lacerations to both of Edge's cheeks, her upper lip, her chest, her right wrist, and her right hand. The trial court admitted photographs taken by Hardesty of Edge's injuries and of a knife recovered at the scene. Hardesty testified Edge suffered over 20 lacerations in the attack.

¶ 8         On cross-examination, Hardesty testified she attempted to speak with defendant but he did not answer any questions. Hardesty observed defendant was "covered in blood" and smelled strongly of alcohol.

¶ 9         In mitigation, defense counsel read a portion of a police report summarizing a statement made by Beth Edge on June 5, 2018. In her statement, Edge asserted she and defendant decided to go out for dinner after they attended an Alcoholics Anonymous (AA) meeting. Defendant wanted to drink alcohol with dinner. Although Edge attempted to place limits on how much they would drink, they ended up drinking alcohol at four different restaurants and bars. After the last bar closed at 1 a.m., Edge began driving them home in her Jeep Cherokee. They stopped at a store to buy beer, but they were unable to purchase alcohol because it was too late.

¶ 10        When they got back into Edge's vehicle, defendant became angry and asked her to drive to Rockford, Illinois, so he could buy more alcohol. After she turned toward home, defendant again demanded to go to Rockford and shifted the car into park. Edge began driving again after telling defendant she would turn around and take him to Rockford. At that point, Edge became afraid due to defendant's actions and demeanor and, as she performed a U-turn, she stopped the car, got out, and began running toward a nearby building. As she was running toward the building, Edge turned around and saw defendant chasing her with a knife. According to her statement, Edge then "felt herself getting stabbed on the right side of her back and she kept getting stabbed several times. She turned around and [defendant] continued to stab her while she faced him." She struggled with defendant and he eventually stopped stabbing her.

¶ 11        Edge took her shirt off and wrapped it around her neck to try to stop the bleeding. Edge stated she thought she was going to die during the attack. After the attack, defendant "tried cuddling with her and he put his hands on her wounds." He began apologizing to her, saying " 'I'm

sorry, I'm sorry, oh, God, oh, God, I love you.' " Edge stated defendant carried the knife in a case attached to his belt. She denied feeling intoxicated during the attack, and she stated defendant did not appear intoxicated either, despite drinking "about 12 beers" over the course of the night.

¶ 12 Defendant testified he pled guilty to avoid putting Edge through a trial. He met Edge in AA and they had known each other for about five months prior to this incident. He had been in the process of moving into Edge's home and they had planned to get married.

¶ 13 Defendant testified he did not remember leaving the last bar on the night of the incident. He remembered being at a gas station for a brief moment and the next thing he remembered was hearing Edge telling him to stop. He stated, "[I]t was like I woke up, I was unconscious and then I wasn't." He dropped the knife and called 911 on his phone at Edge's request. Defendant expressed remorse for causing the injuries to Edge.

¶ 14 Defendant further testified he had been homeless several times, including due to his substance abuse problem in 2009, after he was released from jail in California in 2013, and when he stayed at the Salvation Army in 2017. He testified his relationship with his older son was "strained," he had an "average" relationship with his younger son, and his relationship with his daughter was "excellent." He spoke with his daughter "regularly," including during his period of incarceration. Defendant testified his father had "gotten [him] drunk" when he was three years old. Defendant characterized his drug and alcohol use during his life as "a miserable roller coaster ride." He had been sober while incarcerated during the four years since this incident and testified he knew he could never drink again. He explained he did not participate in mental health counseling while incarcerated because it was only offered by telephone and he was not comfortable discussing his mental health over the phone in a hallway where other people could hear the discussion.

¶ 15 Defendant expressed remorse again for the incident and the injuries Edge suffered, and he asserted it would not have happened without alcohol. He stated he was diagnosed with bipolar disorder and alcohol affected his condition negatively.

¶ 16 In its sentencing recommendation, the State read portions of Edge's victim impact statement. She stated her life had been changed permanently due to the attack. She had scars on her upper body, shoulders, chest, neck, right hand, right wrist, left index and middle fingers, both cheeks, lip, and neck, which were all "permanent visible reminders" of the attack. She required 24-hour care for almost two months after she was released from the hospital because she was unable to feed herself, shower, go to the bathroom, cook, drive a vehicle, or even hold a cup. Some of the pain will be permanent, even with physical therapy. She suffered extensive damage to her right hand and had only regained 60 to 70% usage after orthopedic surgery and physical therapy. She had also experienced nightmares as a result of the attack, and she only felt safe knowing defendant was incarcerated.

¶ 17 The State noted defendant's criminal history included four domestic battery convictions between 1993 and 2002, a misdemeanor aggravated assault conviction in 2008, a misdemeanor battery conviction in 2014, and prior convictions for driving under the influence of alcohol in 2008 and 2009. The State argued defendant's criminal history established a pattern of domestic violence and alcohol abuse. Based on all the circumstances, the State recommended a sentence of 25 years' imprisonment.

¶ 18 Defense counsel acknowledged the "significant and profound" injuries suffered by Edge, but he argued the evidence indicating defendant "black[ed] out" and defendant's expressions of remorse justified a reduced sentence. Counsel also asked the trial court to consider as mitigating factors defendant's troubled childhood, his lifelong substance abuse problem, and his decision to

plead guilty to avoid putting Edge through a trial. Defense counsel requested a sentence near the minimum of six years' imprisonment or, if the court was not inclined to impose the minimum, a sentence "somewhere in the vicinity of ten to fifteen years." In allocution, defendant apologized and stated his criminal record was a result of his alcohol abuse. Defendant assured the court he would never drink alcohol again.

¶ 19 In sentencing defendant, the trial court stated it had considered the nature and circumstances of the offense, the evidence presented at the sentencing hearing, the presentencing investigation report (PSI), the statutory mitigating and aggravating factors, and the arguments of the parties. The court noted the significant and ongoing impact of the attack on Edge and her family. The court believed defendant's remorse was genuine, but his "extreme addiction to alcohol" over "decades" remained a substantial concern. Defendant's many attempts at treatment had been met with "very little success." While defendant stated he would never drink again, his statement was not consistent with his history. Defendant's longstanding failure to address his alcohol issues led directly to criminal behavior, including the offense in this case. Based on all the circumstances and the evidence presented at the sentencing hearing, the court sentenced defendant to 20 years' imprisonment. The court also found defendant's conduct resulted in great bodily harm to the victim.

¶ 20 Defendant filed a motion to reconsider his sentence, asserting it was excessive given the nature and circumstances of the offense and his history and character. Defendant contended the trial court failed to adequately consider his rehabilitative potential.

¶ 21 At the hearing on the motion, defense counsel asked the trial court to consider defendant's rehabilitative potential, "poor social environment," limited education, and the circumstances of the offense, which was "committed after drinking or as a result of alcoholism."

Counsel argued defendant's intoxication while committing this offense should have been considered as a mitigating factor. Additionally, defendant's past attempts at treatment showed his rehabilitative potential, but they were used by the court to increase his sentence. Counsel contended the sentencing factors, properly considered, would support either a minimum sentence or, alternatively, a sentence in the range of 14 to 15 years' imprisonment.

¶ 22　　　　Following the hearing, the trial court agreed defendant's intoxication was overemphasized and treated as an aggravating factor in imposing the sentence. After reconsideration, the court reduced defendant's sentence to 18 years' imprisonment.

¶ 23　　　　This appeal followed.

¶ 24　　　　　　　　　　　　　II. ANALYSIS

¶ 25　　　　On appeal, defendant contends his 18-year sentence is excessive given his intoxication during the offense, his remorse, his commitment to sobriety, and his potential for rehabilitation now that he is no longer drinking. Defendant maintains his sentence is "incompatible with the relative seriousness of his conduct, particularly considering his intoxication during the offense, addiction, and mental health issues." According to defendant, this offense was a spontaneous act in a moment of extreme intoxication.

¶ 26　　　　Defendant further argues his sentence is inconsistent with the goal of restoring him to useful citizenship. Defendant contends his rehabilitative potential is evidenced by his commitment to sobriety and his remorse shown immediately following the offense and continuing during his incarceration. Additionally, defendant asserts the sentence does not adequately account for his abusive childhood which led to his substance abuse and mental health issues. Based on all the circumstances, defendant maintains this court should either reduce his sentence or remand for a new sentencing hearing.

¶ 27    The State notes the trial court already reduced defendant's sentence following the hearing on the motion to reconsider after agreeing it had initially placed too much emphasis on his intoxication during the offense and his history of substance abuse. According to the State, the court placed appropriate weight on those factors when reconsidering the sentence. The State contends the court's sentence is supported by the seriousness of the offense, defendant's significant criminal history, his lack of rehabilitative potential due to his history of alcoholism and associated criminal conduct, and his prior inability to successfully complete treatment. The State maintains the court did not abuse its discretion in imposing the sentence in this case.

¶ 28    The Illinois Constitution provides "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Thus, in imposing a sentence, the trial court must balance the seriousness of the offense with the defendant's potential for rehabilitation. *People v. Blair*, 2015 IL App (4th) 130307, ¶ 33. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102.

¶ 29    A trial court's sentence is entitled to great deference because it is in a better position than a reviewing court to weigh the particular circumstances of the case, including "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Stacey*, 193 Ill. 2d at 209. Absent an abuse of discretion, the trial court's sentence may not be altered on review. *Stacey*, 193 Ill. 2d at 209-10. A "sentence within statutory limits will be

deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 30 The statutory sentencing range for the offense of attempt (first degree murder) is 6 to 30 years' imprisonment (720 ILCS 5/9-1(a)(1); 8-4(a), (c)(1) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018)). Defendant's 18-year sentence was squarely in the middle of the statutory sentencing range.

¶ 31 In imposing the sentence, the trial court properly considered the seriousness of the offense. This court has repeatedly held the seriousness of the offense is the most important sentencing consideration. See *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 38. The evidence showed defendant chased Edge, who he testified he planned to marry, with a knife and stabbed her over 20 times. The photographs of Edge submitted by the State at sentencing documented the severity of her injuries. Although defendant argues the offense was the result of a spontaneous act fueled by extreme intoxication, the fact remains Edge suffered over 20 wounds and still suffers from the impact of this incident every day. She has scars all over her body serving as "permanent visible reminders" of the attack, permanent pain in parts of her body, and restricted use of her right hand. She has also experienced nightmares as a result of the attack and only felt safe knowing defendant was incarcerated. The seriousness of the offense in this case cannot be minimized.

¶ 32 The trial court also considered defendant's significant criminal history over the course of an extended period of time, including four domestic batteries, two convictions for driving under the influence of alcohol, and aggravated assault of a police officer. The court did not list defendant's entire criminal history but noted his failure to address his alcoholism had led to criminal behavior over the years.

¶ 33    In mitigation, the trial court expressly found defendant's remorse was genuine. The court also considered the PSI, which included evidence about defendant's troubled childhood, mental health, limited education, employment, and social environment. The court discussed much of the evidence contained in the PSI and, absent evidence to the contrary, we presume the court considered all mitigating evidence in the record. *People v. Harris*, 2015 IL App (4th) 140696, ¶ 57.

¶ 34    We note defendant's argument in this case relies heavily on his asserted "high potential for rehabilitation" given his commitment to sobriety. However, defendant's most recent period of sobriety began when he was incarcerated for this offense, and sobriety during incarceration does not necessarily indicate defendant will remain sober after he is released from prison. The trial court did not err in considering defendant's history of alcohol abuse, his resulting criminal activity, and his prior unsuccessful attempts at treatment in determining his potential for rehabilitation. See *People v. Tross*, 281 Ill. App. 3d 146, 152 (1996) (stating a defendant's failure to address his repeated alcohol abuse which has led to recidivism may be considered in determining his rehabilitative potential); *People v. Scott*, 225 Ill. App. 3d 938, 941 (1992) (stating a history of alcoholism may be considered as evidence the defendant's conduct is likely to recur).

¶ 35    In this case, the trial court acknowledged defendant's professed commitment to sobriety, but it found his statement was not consistent with his history. In fact, defendant acknowledged his substance abuse history was "a miserable roller coaster ride." The court was not required to take defendant's assurance of sobriety at face value when it was inconsistent with his history of substance abuse and criminal activity over many years. Further, although defendant contends the court did not properly consider his intoxication during this offense, the court reduced his sentence to 18 years based on that factor following the hearing on his motion to reconsider.

¶ 36    In sum, defendant essentially asks this court to reweigh the sentencing factors on appeal and reduce his sentence. However, it is well settled a reviewing court may not reweigh the sentencing factors or substitute its judgment for that of the trial court. *Stacey*, 193 Ill. 2d at 209. Instead, we must focus on the essential question of whether the court abused its discretion in imposing the sentence. *Stacey*, 193 Ill. 2d at 209-10. Given all the factors, including the seriousness of the offense, we conclude the 18-year sentence in this case was not "greatly at variance with the spirit and purpose of the law" or "manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. Accordingly, the trial court did not abuse its discretion in imposing defendant's sentence.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the trial court's judgment.

¶ 39    Affirmed.